No. 23-20256

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

---

EVERETT DE'ANDRE ARNOLD, KADEN BRADFORD, and SANDY ARNOLD

*Plaintiffs - Appellees*

v.

BARBERS HILL INDEPENDENT SCHOOL DISTRICT, BARBERS HILL INDEPENDENT SCHOOL DISTRICT'S BOARD OF TRUSTEES, FRED SKINNER, and GREG POOLE

*Defendants - Appellants*

---

On Appeal from the U.S. District Court,
Southern District of Texas, No. 4:20-CV-1802

---

## BRIEF FOR PLAINTIFFS-APPELLEES

AKIN GUMP STRAUSS HAUER & FELD LLP
Roxanne Tizravesh
Nicholas E. Petree
R. Conor Tomalty
Nik Soni
1111 Louisiana Street, Ste. 44
Houston, Texas 77002
T: (713) 220-5800

Evan Frohman
1 Bryant Park
New York, NY 10036

*Counsel for Plaintiffs-Appellees*

NAACP LEGAL DEFENSE & EDUCATIONAL FUND, INC.
Janai S. Nelson
Ashley Burrell
Alexandra S. Thompson
Alaizah Koorji
Patricia Okonta
40 Rector Street, 5th Floor
New York, New York 10006
Tel: (212) 965-2200

Michaele N. Turnage Young
Victor Jones
Joseph Wong
700 14th Street N.W., Ste. 600
Washington, D.C. 20005
T: (202) 682-1300

**CERTIFICATE OF INTERESTED PERSONS**

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| Former or Current Plaintiffs-Appellees | Former or Current Counsel |
|---|---|
| Everett De'Andre Arnold<br>Sandy Arnold<br>Kaden Bradford<br>Cindy Bradford | NAACP Legal Defense and Educational Fund, Inc. |
| | Akin Gump Strauss Hauer & Feld LLP |
| | Janai S. Nelson |
| | Michaele N. Turnage Young |
| | Patricia Okonta |
| | Mahogane Reed |
| | Victor Jones |
| | Joseph Wong |
| | Ashley Burrell |
| | Alaizah Koorji |
| | Alexandra Thompson |
| | Walter Jean-Jacques |
| | Romane Paul |
| | Austin McLeod |
| | Stephen Baldini |
| | Roxanne Tizravesh |
| | Nicholas E. Petree |
| | R. Conor Tomalty |

|  | Alyx Eva |
|  | Christina Hightower |
|  | Michael Reeder, III |
|  | Evan Frohman |
|  | Nikunj Soni |
|  | Samantha Block |

| Former or Current Defendants-Appellants | Former or Current Counsel |
| --- | --- |
| Barbers Hill Independent School District | Leon Alcala PLLC |
| Barbers Hill Independent School District's Board of Trustees | Sara Leon |
| George Barrera | Hans Graff |
| Fred Skinner | Fanning Harper Martinson Brandt & Kutchin PC |
| Cynthia Erwin | Thomas P. Brandt |
| Becky Tice | Christopher T. Brandt |
| Benny May | Francisco J. Valenzuela |
| Eric Davis | Caroline Sileo Lawhorn |
| Clint Pipes | Laura Dahl O'Leary |
| Greg Poole | Rogers, Morris & Grover LLP |
| Sandra Duree | Richard A. Morris |
| Mandy Malone | Jonathan Griffin Brush |
| Rick Kana | Amy Demmler |
| Ryan Rodriguez |  |
| Doug Anderson |  |
| Kirven Tillis |  |

| Amicus Curiae Below | Former or Current Counsel |
|---|---|
| United States of America | Kristen Clarke |
| | Shaheena A. Simons |
| | Whitney M. Pellegrino |
| | Kelly D. Gardner |
| | Teresa Yeh |
| | Emma Leheny |
| | Vanessa Santos |
| | Jennifer B. Lowery |
| | Elizabeth Karpati |

/s/ Michaele N. Turnage Young
Michaele N. Turnage Young

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiffs-Appellees submit that oral argument is unnecessary because the issues raised by this appeal are clearly resolved under controlling precedent. The law is clear that an appellate court should not entertain an interlocutory appeal where there was no final decision below; that a testimonial privilege may not be invoked to shield discovery of information a litigant has affirmatively advanced as a sword to defend itself; and that a legislator may not continue to invoke legislative privilege after having waived the privilege by repeatedly sharing the allegedly privileged information publicly. Additionally, while Barbers Hill Independent School District ("BHISD") calls the district court's order an abuse of discretion, this Court has already said that an identical order was "carefully crafted," "admirably prudent, cautious, vigilant, and narrow."

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ................................................... ii

STATEMENT REGARDING ORAL ARGUMENT .......................................... v

TABLE OF CONTENTS ..................................................................... vi

TABLE OF AUTHORITIES ................................................................ viii

JURISDICTIONAL STATEMENT ......................................................... 1

STATEMENT OF THE ISSUES ............................................................ 1

STATEMENT OF THE CASE .............................................................. 1

SUMMARY OF THE ARGUMENT ........................................................ 5

STANDARD OF REVIEW ................................................................. 8

ARGUMENT .............................................................................. 8

I.   This Court Lacks Jurisdiction Because The Challenged Order Is Not
     Reviewable Under The Collateral Order Doctrine .............................. 8

II.  The District Court Did Not Abuse Its Discretion by Issuing an Order
     Materially Identical to an Order Viewed Favorably by the Fifth Circuit. ........ 14

     A.   The Fifth Circuit Has Described the Procedure Adopted by the
          District Court As "Carefully Crafted," "Admirably Prudent, Cautious,
          Vigilant, and  Narrow." ...................................................... 14

     B.   Courts in This and Other Circuits Have Used the Procedure Set Forth
          by the Lower Court ........................................................... 19

     C.   None of the cases BHISD Cites Overrules *LULAC II*, Which Called
          the Challenged Order "Carefully Crafted," "Admirably Prudent,
          Cautious, Vigilant, and Narrow." ........................................... 20

III. Legislative Privilege Does Not Apply Here. ................................... 24

     A.   Superintendent Poole Does Not Have Standing to Invoke Legislative
          Privilege. ..................................................................... 24

B.    Superintendent Poole and the Board Have Waived Legislative Privilege........................................................................................ 26

    1.    Superintendent Poole and the Board Waived Legislative Privilege Through Prior Public Statements. .............................. 26

    2.    Superintendent Poole and the Board Waived Legislative Privilege by Attempting to Use Legislative Privilege as a Sword and Shield................................................................................... 31

IV. Even If Legislative Privilege Applies and Was Not Waived, It Should Yield as This Case Presents Important Federal Interests. ...............................................35

**CONCLUSION**.....................................................................................................**38**

**CERTIFICATE OF COMPLIANCE** ...............................................................**41**

**CERTIFICATE OF SERVICE** ........................................................................**42**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A-Mark Auction Galleries, Inc. v. Am. Numismatic Ass'n*,
233 F.3d 895 (5th Cir. 2000) ........................................................... 10

*Alexander v. Holden*,
66 F.3d 62 (4th Cir. 1995) ............................................................... 27

*Allen v. Wright*,
468 U.S. 737 (1984), *abrogated on other grounds by Lexmark Int'l,*
*Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014) ........... 36

*Am. Trucking Ass'ns, Inc. v. Alviti*,
14 F.4th 76 (1st Cir. 2021) ........................................................ 15, 37

*Angelicare, LLC v. St. Bernard Par.*,
No. 17-7360, 2018 WL 1172947 (E.D. La. Mar. 6, 2018) ................. 38

*Arnold v. Barbers Hill Indep. Sch. Dist.*,
479 F. Supp. 3d 511 (S.D. Tex. 2020) .............................................. 23

*Baldus v. Members of Wis. Gov't Accountability Bd.*,
No. 11-CV-562, 2011 WL 6122542 (E.D. Wis. Dec. 8, 2011) ........... 38

*Banca Pueyo SA v. Lone Star Fund IX (US), L.P.*,
978 F.3d 968 (5th Cir. 2020) ........................................................... 11

*Bob Jones Univ. v. United States*,
461 U.S. 574 (1983) ........................................................................ 36

*Brown v. Bd. of Educ.*,
347 U.S. 483 (1954) ........................................................................ 36

*Cohen v. Beneficial Indus. Loan Corp.*,
337 U.S. 541 (1949) ................................................................*passim*

*Conkling v. Turner*,
883 F.2d 431 (5th Cir. 1989) ....................................... 32, 33, 34, 35

*Cunningham v. Chapel Hill, ISD*,
438 F. Supp. 2d 718 (E.D. Tex. 2006)....................................................24, 25, 33

*Doe v. Baylor Univ.*,
335 F.R.D. 476 (W.D. Tex. 2020) ....................................................................32

*Favors v. Cuomo*,
285 F.R.D. 187 (E.D.N.Y. 2012)................................................................26, 30

*Gilby v. Hughs*,
471 F. Supp. 3d 763 (W.D. Tex. 2020) ................................................24, 25, 26

*Gravel v. United States*,
408 U.S. 606 (1972)..........................................................................................25

*Henry v. Lake Charles Am. Press, L.L.C.*,
566 F.3d 164 (5th Cir. 2009) ............................................................................11

*Hobart v. City of Stafford*,
784 F. Supp. 2d 732 (S.D. Tex. 2011)..............................................................37

*In re Itron, Inc.*,
883 F.3d 553 (5th Cir. 2018) ......................................................................32, 35

*Jackson Mun. Airport Auth. v. Harkins*,
67 F.4th 678 (5th Cir. 2023), *withdrawn and superseded* by 2023
WL 5522213 (5th Cir. Aug. 25, 2023), *vacated* by 2023 WL
5542823 (5th Cir. Aug. 29, 2023).................................................................20, 21

*Jefferson Cmty. Health Care Ctrs, Inc. v. Jefferson Par. Gov't*,
849 F.3d 615 (5th Cir. 2017) ............................................................................35

*La. Real Est. Appraisers Bd. v. U.S. Fed. Trade Comm'n*,
976 F.3d 597 (5th Cir. 2020) ............................................................................10

*La Union Del Pueblo Entero v. Abbott*,
68 F.4th 228 (5th Cir. 2023) ......................................................................*passim*

*League of United Latin Am. Citizens v. Abbott*,
No. 21-CV-00259, 2022 WL 2866673 (W.D. Tex. July 6, 2022).....................19

*League of United Latin Am. Citizens v. Abbott*,
No. 22-50407, 2022 WL 2713263 (5th Cir. May 20, 2022) ......................*passim*

*League of United Latin Am. Citizens v. Abbott*,
　No. EP-21-cv-259-DCG-JES-JVB, 2022 WL 1570858 (W.D. Tex.
　May 18, 2022) ....................................................................................15, 16, 17

*Lee v. City of Los Angeles*,
　908 F.3d 1175 (9th Cir. 2018) ...............................................................22, 23, 24

*Leonard v. Martin*,
　38 F.4th 481 (5th Cir. 2022) ................................................................................10

*Malik v. U.S. Dep't of Homeland Sec.*,
　78 F.4th 191 (5th Cir. 2023) ..................................................................................8

*Mohawk Indus., Inc. v. Carpenter*,
　558 U.S. 100 (2009)...............................................................................9, 12, 13

*In re N.D. Legis. Assembly*,
　70 F.4th 460 (8th Cir. 2023) ..............................................................................37

*Nashville Student Org. Comm. v. Hargett*,
　123 F. Supp. 3d 967 (M.D. Tenn. 2015) ............................................................20

*Newman v. Piggie Park Enterprises, Inc.*,
　390 U.S. 400 (1968)...........................................................................................36

*Nguyen v. Excel Corp.*,
　197 F.3d 200 (5th Cir. 1999) .............................................................................30

*Perez v. Perry*,
　No. 5:11-CV-360, 2014 WL 106927 (W.D. Tex. Jan. 8, 2014)...................26, 27

*Perez v. Perry*,
　No. 5:11-CV-360-OLG-JES (W.D. Tex.) ..........................................................20

*In re Schlumberger Tech. Corp.*,
　818 F. App'x 304 (5th Cir. 2020) ......................................................................32

*In re Search of Elec. Commc'ns*,
　802 F.3d 516 (3d Cir. 2015) ..............................................................................11

*Texas v. Holder*,
　No. 1:12-CV-128 (D.D.C.) ...............................................................................20

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.*,
393 U.S. 503 (1969).................................................................36

*United States v. Bd. of Educ. of the City of Chi.*,
610 F. Supp. 695 (N.D. Ill. 1985)...........................................37

*United States v. Corp. Mgmt., Inc.*,
78 F.4th 727 (5th Cir. 2023) ....................................................8

*United States v. Gillock*,
445 U.S. 360 (1980)....................................................17, 22, 35

*United States v. Woodall*,
438 F.2d 1317 (5th Cir. 1970) .................................................31

*Van Cauwenberghe v. Biard*,
486 U.S. 517 (1988).....................................................................9

*Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.*,
913 F.3d 443 (5th Cir. 2019) ................................................8, 9

*Veasey v. Perry*,
No. 2:13-CV-193, 2014 WL 1340077 (S.D. Tex.)..................38

*Veasey v. Perry*,
No. 2:13-CV-193 (S.D. Tex.) .................................................19

*Whole Woman's Health v. Smith*,
896 F.3d 362 (5th Cir. 2018) .................................................10

*Will v. Hallock*,
546 U.S. 345 (2006).....................................................9, 10, 11

*Willy v. Admin. Rev. Bd.*,
423 F.3d 483 (5th Cir. 2005) .................................................32

## JURISDICTIONAL STATEMENT

For the reasons given *infra* at 8-14 of the Argument section, this Court does not have jurisdiction over this appeal or the related stay motion, which has been carried with the case, *see* ROA.4502.

## STATEMENT OF THE ISSUES

1.      Should this Court entertain an interlocutory appeal when there was no final decision below?

2.      Did the district court abuse its discretion when it entered an order identical to one the Fifth Circuit called "carefully crafted," "admirably prudent, cautious, vigilant, and narrow"?

3.      Can a state legislator continue to assert legislative privilege even after having waived it by repeatedly sharing allegedly privileged information with the public?

4.      Should a litigant be permitted to use legislative privilege as both a sword and a shield in litigation?

## STATEMENT OF THE CASE

In this lawsuit, Plaintiffs-Appellees seek relief from BHISD's policy regulating male students' hair (the "Hair Policy") on the grounds that the Hair Policy's construction and enforcement is unconstitutional race and sex discrimination and violates students' right to freedom of expression. *See generally*

ROA.3105-3225. A core question before the district court is whether race played a role in the decision of BHISD's Board of Trustees (the "Board") to adopt and revise the Hair Policy. *See* ROA.4063 (district court order recognizing that the information sought by Plaintiffs is "crucial because it bears on [BHISD's] motives for the . . . policy change").

The Board is responsible for enacting and revising certain policies, including the Hair Policy. ROA.2976. The Hair Policy was revised at a public Board meeting on December 16, 2019. ROA.2976. As the district court has explained, "[BHISD] has stated that it made the December 2019 policy change 'because of' recommendations made by [the United States Department of Justice], 'and not in order to target students of a particular race.'" ROA.4063. Indeed, each member of BHISD's Board and Superintendent Greg Poole submitted declarations to the district court discussing their motivations and rationales for the Hair Policy and stating that the December 2019 revisions to the Hair Policy were made based on recommendations from the U.S. Department of Justice. *See* ROA.1568 at ¶ 16; ROA.1649 at ¶ 8; ROA.1653 at ¶ 7; ROA.1656 at ¶ 5; ROA.1658 at ¶ 6; ROA.1664-1665 at ¶ 4; ROA.1667-1669 at ¶¶ 4, 9; & ROA.1671 at ¶ 4. In addition, Superintendent Poole published an op-ed in a newspaper and made several public statements on Twitter concerning the rationale behind the revisions to the Hair Policy. *See* ROA.3018-3020 & ROA.3152-3154.

Moreover, on July 23-24, 2020, Superintendent Greg Poole testified in court regarding BHISD's motivation for revising the Hair Policy. *See* ROA.5179-5181, ROA.5205-5206, & ROA.5584. Superintendent Poole testified that BHISD's revisions to its Hair Policy were "initiated, timed with, [and] coordinated with the DOJ," ROA.5205-5206, and "the primary impetus [for the change] was the DOJ," ROA.5584. Further, Superintendent Poole testified that BHISD let the U.S. Department of Justice "bless those changes that [BHISD] made." ROA.5181.

The U.S. Department of Justice, however, has contested those representations. In a July 28, 2020 letter, an attorney from the U.S. Department of Justice stated that their office did not recommend the December 2019 revisions to the Hair Policy. *See* ROA.4063 (district court order recounting the letter).

Accordingly, Plaintiffs-Appellees sought discovery that would allow them to evaluate the Board's and Superintendent Poole's representations about their motives for adopting the Hair Policy—and the inconsistency between those representations and the statements of the U.S. Department of Justice. Towards that end, Plaintiffs-Appellees sought to depose Superintendent Poole (both as a fact witness and as BHISD's 30(b)(6) designee) and Board members, including Mr. Fred Skinner. Mr. Skinner is a long-serving Board Trustee and former Board President, who attended all Board meetings, and is currently the Board's Vice President. *See, e.g.*, ROA.4229 ¶ 1; ROA.4242 ¶ 1; ROA.4264 ¶ 1.

On May 25, 2022, at a discovery hearing, the district court instructed Plaintiffs-Appellees to move forward with Trustee Skinner's deposition and authorized Plaintiffs-Appellees to "ask him questions about any communications . . . between the other board members, [including] their motives." ROA.5721.

BHISD moved for a protective order that would bar Plaintiffs-Appellees from asking deposition questions that may elicit testimony that BHISD believes is covered by "legislative immunity." *See* ROA.4186-4198. In response, Plaintiffs-Appellees noted, *inter alia*, that BHISD was attempting to use testimonial privileges as both a sword and a shield—claiming that their revisions to the challenged policy were motivated by the U.S. Department of Justice, not by racial discrimination, while at the same time attempting to bar Plaintiffs-Appellees from testing that rationale by inquiring into the Board's motives. ROA.4200-4266.

The district court resolved BHISD's motion on June 1, 2023, holding that the issue of legislative privilege was not ripe for decision and setting forth a procedure to govern outstanding depositions. ROA.4446-4448 ("[T]he Court concludes that issues of state legislative privilege are not yet ripe for decision . . . the Court will be better positioned to make decisions on the application of the privilege when 'presented with specific questions and specific invocations of [] legislative privilege' . . . . Nothing in this order shall be construed as deciding any issue of legislative privilege.").

BHISD appealed that order. ROA.4454-4456. BHISD has since declined to present either Superintendent Poole or Trustee Skinner for deposition. BHISD's Br. at 5. On June 30, 2023, the district court entered an order compelling the depositions of Superintendent Poole, BHISD's Rule 30(b)(6) witness (BHISD has designated Superintendent Poole as its 30(b)(6) deponent), and Trustee Skinner. ROA.4500. On July 5, 2023, this Court granted a temporary administrative stay, declaring, "All proceedings before the district court are hereby stayed pending further order of this court." Doc. 43-1.

## SUMMARY OF THE ARGUMENT

In the face of significant evidence that BHISD's Hair Policy was motivated by discrimination against Black male students who wore their hair in locs in homage to their heritage, BHISD scrambled to advance a pretextual, alternative reason for their actions. BHISD insisted that the changes to the Hair Policy that resulted in the Plaintiffs' exclusions from school were made to further their pursuit of excellence and at the request of the U.S. Department of Justice. The superintendent and every single school board member publicly filed sworn declarations in court saying as much. The superintendent said as much in his sworn testimony in court. The superintendent also fired off tweets and wrote an op-ed advancing this narrative.

But now, when faced with depositions where a school board member and the superintendent (both as a fact witness and as BHISD's 30(b)(6) designee) would be

placed under oath and asked about this subject by Plaintiffs' counsel, BHISD insists they should not have to answer. BHISD seeks to use a testimonial privilege to avoid having its superintendent and a school board member sit for a deposition where they may be asked about the pretext they advanced in publicly-filed declarations, in sworn testimony uttered in a public court hearing, on Twitter, in a newspaper, and elsewhere.

Even if this Court had jurisdiction over this appeal (and, as discussed *infra* at 8-14, it does not), it is well-established that a litigant may not use allegedly privileged information as a sword to defend itself while at the same time invoking privilege as a shield to prevent their adversary from asking questions to test the veracity of their defense.

Moreover, this appeal is not properly before this Court, given that the district court never issued a final decision as to whether legislative privilege applied. Rather, the district court concluded that the issue was not ripe because BHISD sought a privilege determination about questions that had yet to be asked and answers that had yet to be given.

The district court's reasoned order setting forth a procedure for navigating depositions involving testimony that BHISD claims is covered by legislative privilege is consistent with binding precedent. Indeed, that order is almost identical to an order that the Fifth Circuit called "carefully crafted," "admirably prudent,

cautious, vigilant, and narrow." *League of United Latin Am. Citizens v. Abbott* ("*LULAC II*"), No. 22-50407, 2022 WL 2713263, at *2 (5th Cir. May 20, 2022) (discussing an order entered by a three-judge court in *League of United Latin Am. Citizens v. Abbott* ("*LULAC*"), No. EP-21-CV-259-DCG-JES-JVB, 2022 WL 1570858 (W.D. Tex. May 18, 2022)).

Furthermore, legislative privilege simply does not apply where: (a) neither Superintendent Poole nor Trustee Skinner has individually asserted legislative privilege, (b) Superintendent Poole is not a legislator and does not have standing to invoke legislative privilege, (c) even assuming arguendo that Superintendent Poole could invoke legislative privilege, he waived it by repeatedly sharing allegedly privileged information with the public via publicly-filed court documents, his testimony in court, on Twitter, and via an op-ed he submitted to a newspaper, and (d) Trustee Skinner likewise waived legislative privilege by volunteering allegedly privileged information in a publicly-filed declaration in court.

Finally, even assuming arguendo that (a) this Court had jurisdiction, (b) the privilege was applicable, (c) the privilege had not been waived, and (d) BHISD was not attempting to undermine the judicial process by wielding legislative privilege as both a sword and a shield, legislative privilege should still yield here in favor of the important federal interest in vindicating anti-discrimination laws.

In sum, this Court should dismiss this appeal for lack of jurisdiction and dissolve the stay pending appeal. Alternatively, this Court should affirm the orders of the district court, allowing depositions to proceed as governed by the lower court's June 1, 2023 order.

## STANDARD OF REVIEW

The Fifth Circuit "review[s] discovery orders 'for abuse of discretion.'" *La Union Del Pueblo Entero v. Abbott* (*"LUPE II"*), 68 F.4th 228, 235 (5th Cir. 2023) (quoting *Whole Woman's Health v. Smith*, 896 F.3d 362, 369 (5th Cir. 2018)). This Court "applies a highly deferential standard of review to discovery matters." *United States v. Corp. Mgmt., Inc.*, 78 F.4th 727, 750 (5th Cir. 2023). Indeed, "a district court has broad discretion in all discovery matters," and "such discretion will not be disturbed ordinarily unless there are unusual circumstances showing a clear abuse." *Malik v. U.S. Dep't of Homeland Sec.*, 78 F.4th 191, 196 (5th Cir. 2023).

## ARGUMENT

### I.    This Court Lacks Jurisdiction Because The Challenged Order Is Not Reviewable Under The Collateral Order Doctrine

As a threshold matter, this Court lacks jurisdiction because the district court's June 1, 2023 order is not reviewable under the collateral order doctrine. Appellate jurisdiction is generally limited to "final decisions of the district courts." *Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.*, 913 F.3d 443, 448 (5th Cir. 2019). "Pretrial discovery orders are generally not considered final decisions; even an order

to disclose potentially privileged material is likewise insufficient by itself to provide jurisdiction." *Id.* at 449. *See also Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 108 (2009) ("[W]e have generally denied review of pretrial discovery orders.").

The Supreme Court has articulated a narrow set of circumstances—known as the *Cohen*[1] exception—in which collateral orders may be appealable, requiring that they "'[1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment.'" *Will v. Hallock*, 546 U.S. 345, 349-50 (2006) (citation omitted) (noting that, "The conditions are 'stringent," noting the exception's "modest scope," and deeming the exception narrow since, to broaden the exception would undermine the interest in judicial efficiency and the "sensible policy of avoiding the obstruction of just claims that would come from permitting the harassment and cost of a succession of separate appeals from the various rulings to which a litigation may give rise." (cleaned up; citations omitted)).[2]

---

[1] *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546, (1949) (holding a collateral order appealable where it "appears to fall in that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.").

[2] *See also Van Cauwenberghe v. Biard*, 486 U.S. 517, 527–28 (1988) ("Allowing appeals from interlocutory orders that involve considerations enmeshed in the merits of the dispute would waste judicial resources by requiring repetitive appellate review of substantive questions in the case.")

This Circuit has stressed that "the collateral order doctrine must be deployed narrowly and 'with skepticism,'" *La. Real Est. Appraisers Bd. v. U.S. Fed. Trade Comm'n*, 976 F.3d 597, 604 (5th Cir. 2020), and has historically disfavored applying the *Cohen* exception to discovery orders. *A-Mark Auction Galleries, Inc. v. Am. Numismatic Ass'n*, 233 F.3d 895, 899 (5th Cir. 2000) (It is a "well-settled rule . . . that discovery orders may not be appealed under the *Cohen* exception.") (collecting cases).[3]

BHISD's bare statement of jurisdiction, which contains no analysis of how this case fares under *Cohen*, fails. The *Cohen* test is not satisfied in this case, so this Court has no jurisdiction over this interlocutory appeal. The first *Cohen* factor, which requires a "conclusive[] determination" of the disputed issue, is unmet. *Will*, 546 U.S. at 349. The district court has yet to decide whether the legislative privilege applies, and if so, the scope of such privilege. The order explicitly states: "Nothing in this order shall be construed as deciding any issue of legislative privilege."

---

[3] Both *Whole Woman's Health v. Smith*, 896 F.3d 362 (5th Cir. 2018), and *LUPE II*, 68 F.4th 228, exceptions to the rule that pre-trial discovery orders are not appealable, are distinguishable. *See, e.g.*, *Leonard v. Martin*, 38 F.4th 481, 487 (5th Cir. 2022) (distinguishing *Whole Woman's Health v. Smith* on the basis that it involved "discovery against a nonparty with substantial First Amendment implications"); *LULAC II*, 2022 WL 2713263, at *1 ("Judge Willett believes that *Whole Woman's Health v. Smith* is distinguishable because it concerned a very different type of privilege, one resting on the First Amendment."); *LUPE II*, 68 F.4th 228 (appeal from an order that actually determined whether or not a document was protected by legislative privilege). Pretrial discovery orders are generally unreviewable in part because non-parties subject to discovery orders "have alternative avenues for appellate review," as they have the option to resist the order and appeal the contempt citation. *Leonard*, 38 F.4th at 487.

ROA.4448. *See Banca Pueyo SA v. Lone Star Fund IX (US), L.P.*, 978 F.3d 968, 973 (5th Cir. 2020) (finding the first *Cohen* condition not satisfied where the appealed order did "not conclusively determine whether, and to what extent, discovery might be required.").

Neither is second *Cohen* factor satisfied, as the discovery issue is not "completely separate from the merits of the action." *Will*, 546 U.S. at 349. "[W]here the issues raised in an interlocutory appeal 'involve[ ] considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action,' the order is often found not to be separate." *Henry v. Lake Charles Am. Press, L.L.C.*, 566 F.3d 164, 174 (5th Cir. 2009) (citation omitted). Here, the issues raised in this interlocutory appeal—including whether BHISD has waived legislative privilege or is using legislative privilege as both as sword and a shield—require the Court to consider the public statements BHISD has advanced regarding its intent. Indeed, BHISD has taken pains to advance a pretext concerning its intent precisely because Plaintiffs-Appellees allege that BHISD has construed and enforced its Hair Policy to intentionally discriminate against Black and male students. The challenged order, which implicates whether Plaintiffs-Appellees can investigate that intent, is inextricably tied to the merits of this case. *See In re Search of Elec. Commc'ns*, 802 F.3d 516, 525 (3d Cir. 2015) (a prejudgment order denying a motion to quash a search warrant was not completely separate from the merits of the case (and thus not

immediately appealable) where the fruits of the warrant would "become part of the evidentiary chain of proof," and thus "may substantially affect the merits of a case."). Indeed, the challenged order resolved a motion wherein BHISD sought to use a testimonial privilege to prevent Plaintiffs-Appellees from posing deposition questions to BHISD officials that could yield answers about BHISD's intent; the fruits of that deposition questioning would add to the factual record and substantially affect the merits of the case.

Finally, Appellants have failed to meet the third *Cohen* factor, which asks "whether a right is 'adequately vindicable' or 'effectively reviewable.'" *Mohawk Indus., Inc.*, 558 U.S. at 107 (citation omitted). As to this factor, the Supreme Court instructs that "the decisive consideration is whether delaying review until the entry of final judgment 'would imperil a substantial public interest' or 'some particular value of high order.'" *Id*. In *Mohawk*, the Supreme Court held that denying interlocutory jurisdiction of an order which pierced attorney-client privilege did not render the movants' rights effectively unreviewable, and relatedly, would not "imperil" the public interest. *Id. Mohawk* reasoned that "postjudgment appeals generally suffice to protect the rights of litigants and ensure the vitality of the attorney-client privilege. Appellate courts can remedy the improper disclosure of privileged material in the same way they remedy a host of other erroneous evidentiary rulings…." *Id.* at 109.

*Mohawk*'s reasoning applies equally here. The district court—having implemented a cautious, step-by-step *in camera* procedure—should be afforded deference to rule on "the routine application of settled legal principles," which are "unlikely to be reversed on appeal, particularly when they rest on factual determinations for which appellate deference is the norm." *See Id.* at 110 (collecting cases); *see also id.* at 112 ("[T]he limited benefits of applying 'the blunt, categorical instrument of § 1291 collateral order appeal' to privilege-related disclosure orders simply cannot justify the likely institutional costs") (citation omitted).

Appellants summarily assert that this Court has jurisdiction under the collateral order doctrine, citing *LUPE II*. To be sure, *LUPE II* departed from this Circuit's precedent by applying the *Cohen* exception to a discovery order. Nevertheless, *LUPE II* is inapposite. *LUPE II* involved an order that actually made a conclusive determination of the disputed issue since the district court actually determined whether or not legislative privilege applied. The challenged order in *LUPE II* required the production of privileged documents, while the district court here has made no decision on whether or not legislative privilege applies and, if so, the scope of the privilege. The *LUPE II* district court, of course, was ruling on documents that were already in existence, whereas—as the district court here noted—the issue of legislative privilege here is not ripe since it involves questions

that have yet to be asked and answers that have yet to be given. Thus, unlike *LUPE II*, in this case, the first prong of the *Cohen* exception has not been met.

While there was a concern in *LUPE II* that the privileged information of nonparties would be improperly "shared into the public domain," here, the allegedly privileged testimony would be subject to a strict protective order with those protections only removed if the district court determined, after *in camera* review, that legislative privilege did not apply. Moreover, unlike the non-party legislators in *LUPE II*, whose recourse following an erroneous evidentiary ruling may have been limited, Superintendent Poole and Trustee Skinner are represented by defense counsel (who filed this appeal on their behalf as if they are parties). *See LUPE II*, 68 F.4th at 233. Finally, and critically, the legislators in *LUPE II* had not used the allegedly privileged information as both a sword and shield—conduct which is impermissible and waives the privilege. *See infra* at 31-35.

The *Cohen* exception does not apply and the order is not ripe for review. This Court should deny BHISD's appeal for lack of jurisdiction.

## II. The District Court Did Not Abuse Its Discretion by Issuing an Order Materially Identical to an Order Viewed Favorably by the Fifth Circuit.

### A. The Fifth Circuit Has Described the Procedure Adopted by the District Court As "Carefully Crafted," "Admirably Prudent, Cautious, Vigilant, and Narrow."

The district court did not abuse its discretion by entering a discovery order setting forth a procedure to govern outstanding depositions. ROA.4446-4448. In

fact, the procedure set forth by the district court to govern these depositions is nearly identical to an order governing potentially privileged discovery that was viewed favorably by this Court, which called the procedure "carefully crafted," "admirably prudent, cautious, vigilant, and narrow." *LULAC II*, 2022 WL 2713263, at *2 (discussing an order entered by a three-judge court in *LULAC*, 2022 WL 1570858).

In *LULAC*, the United States and private plaintiffs subpoenaed three non-party state representatives to testify at depositions, including questions that may concern the representatives' motive or intent. 2022 WL 1570858 at *1-2. In response to those subpoenas, the representatives filed motions to quash the subpoenas or issue a protective order that would limit the subject matter that the plaintiffs could inquire about on the basis of legislative privilege.[4] *Id.* The district court determined that it would be premature to rule on what information may or may not be subject to legislative privilege. *Id.* The depositions at issue had not occurred and "[w]hether state legislative privilege attaches is [a] fact-and context-specific [inquiry] . . . [that] 'depends on the question being posed.'" *Id.* (quoting *Perez v. Perry,* No. 5:11-CV-360-OLG-JES (W.D. Tex. Aug. 1, 2011), ECF No. 102 at 5).

_____

[4] Contrary to BHISD's argument, *see* BHISD's Br. at 8, "Assertions of legislative immunity and privilege by state lawmakers . . . are governed by federal common law rather than the Speech or Debate Clause, which by its terms applies only to federal legislators." *Am. Trucking Ass'ns, Inc. v. Alviti*, 14 F.4th 76, 87 (1st Cir. 2021). "And the common-law legislative immunity and privilege are less protective than their constitutional counterparts." *Id.*

The district court proceeded with "great caution," developing a procedure to govern the upcoming depositions that protected potentially privileged information, but allowed the plaintiffs to inquire about non-privileged information. *Id.* at *2. Accordingly, the *LULAC* court outlined the following procedure to govern the representatives' depositions:

(1) Parties should proceed with depositions and the deponents must appear and testify even if it appears likely that legislative privilege may be invoked in response to certain questions.

(2) Deponents may invoke legislative privilege in response to particular questions, *but the deponent invoking the privilege must then answer the question in full. The response will be subject to the privilege.*

(3) The portions of deposition transcripts containing questions and answers subject to the privilege shall be deemed to contain confidential information and shall therefore be subject to the "Consent Confidentiality and Protective Order" (Dkt. 202) previously entered in this case.

(4) If a party wishes to use any portion of deposition testimony that is subject to legislative privilege, that party must seal those portions and submit them to the Court for in camera review, along with a motion to compel.

(5) Any such motion to compel shall be filed by August 1, 2022. Though the Court sets this deadline, it encourages the parties to file earlier, if at all possible.

*LULAC*, 2022 WL 1570858, at *2-3. *Cf.* ROA.4447 (the June 1, 2023 order from the district court). The court warned the parties of the seriousness of maintaining

confidentiality and also explained that nothing in the order should be construed as deciding any issue of legislative privilege. *LULAC*, 2022 WL 1570858, at *3. The district court thus recognized that it would be better positioned to make decisions on the scope of the privilege when the court was presented with specific questions and specific invocations of the privilege.

The Fifth Circuit denied the representatives' request to stay the depositions pending appeal. *LULAC II*, 2022 WL 2713263, at *1. In doing so, this Court recognized that the district court did not deny that legislative privilege might apply; rather, it concluded that the issue was "'not yet ripe for decision,' since 'no questions have been asked, and no answer given.'" *LULAC II*, 2022 WL 2713263, at *1 (quoting *LULAC,* 2022 WL 1570858 at *1). The Court noted that, "the [state legislative] privilege is not so broad as to compel [a district court] to quash the deposition subpoenas, modify them, or enter a protective order prohibiting questions about [certain topics] . . ." *Id.* (citing *Jefferson Cmty. Health Care Ctrs, Inc. v. Jefferson Par. Gov't*, 849 F.3d 615, 624 (5th Cir. 2017) (determining that "legislative privilege for state lawmakers is, at best, one which is qualified" and that "this evidentiary privilege cannot bar the adjudication of a claim") and *United States v. Gillock*, 445 U.S. 360, 361 (1980) (recognizing that legislative privilege must yield where important federal interests are at stake). According to this Court, the district court's "vigilant and narrow" order was an "an admirably deliberate and

cautious approach to the legislative privilege issue" that went "to great lengths to protect [m]ovants." *LULAC II*, 2022 WL 2713263, at *1-2.

Here, the challenged order governing depositions is materially identical to the *LULAC* order.[5] *See* ROA.4446-4448. As in *LULAC*, the lower court recognized it was "not [well-]positioned to rule on what information may be the subject of legislative privilege, as determining whether the privilege applies is a fact and content specific inquiry" and depends on the deposition questions being posed. ROA.4446-4447. Thus, it adopted a procedure that allowed the parties to develop the requisite record, while ensuring the interests of the parties remained protected. ROA.4446-4448. Similar to *LULAC*, the challenged order was "carefully crafted," "admirably prudent, cautious, vigilant, and narrow." *See LULAC II*, 2022 WL 2713263, at *2.

The lower court's procedure is prudent because it is understandably difficult for a district court to rule on legislative privilege before the deposition questions are asked and the deponent responds. As this Court has previously declared, "[legislative] privilege must not be used as a cudgel to prevent the discovery of non-privileged information." *LULAC II*, 2022 WL 2713263, at *2 (citing *Jefferson Cmty.*

---

[5] The lower court's order sets forth the *LULAC* instructions verbatim, only diverging from the *LULAC* language in order to clarify the governing protective order and the deadline to submit motions to compel.

*Health*, 849 F.3d at 624; *Gillock*, 445 U.S. at 361). Likewise, "[legislative] privilege must not be used . . . to prevent the discovery of the truth in cases where the federal interests at stake outweigh the interests protected by the privilege." *LULAC II*, 2022 WL 2713263, at *2 (citing *Jefferson Cmty. Health*, 849 F.3d at 624; *Gillock*, 445 U.S. at 361). Here, given that the issue of legislative privilege is not ripe, Plaintiffs-Appellees' claims seek to vindicate an important federal interest, and the depositions will cover information that is not privileged as well as information that BHISD claims is privileged, the Court should affirm the district court's order which sets forth an "admirably prudent" way to proceed.

**B.    Courts in This and Other Circuits Have Used the Procedure Set Forth by the Lower Court.**

Moreover, other cases in this Circuit in similar procedural postures have also followed this procedure. *See, e.g.*, *Veasey v. Perry*, No. 2:13-CV-193 (S.D. Tex. June 18, 2014), ECF No. 341 (denying motions to quash deposition subpoenas filed by legislators on the basis of privilege and ordering legislators and legislative aides to appear for depositions, invoke legislative privilege in response to particular questions, answer subject to the privilege, and seal portions of the deposition transcript concerning allegedly privileged testimony); *League of United Latin Am. Citizens v. Abbott*, ("*LULAC III*") No. 21-CV-00259, 2022 WL 2866673, at *5 (W.D. Tex. July 6, 2022) (recognizing that the district court was poorly positioned to assess the parties' respective legislative privilege arguments because legislative

privilege is a fact and context specific inquiry which depends on the deposition questions posed and outlining a deposition procedure materially identical to *LULAC*); *Perez v. Perry*, No. 5:11-CV-360 (W.D. Tex. Aug. 1, 2011), ECF. No. 102 at 5-6 (ordering parties proceed with depositions and ordering the deponents to appear and testify even if it appears likely that the privilege may be invoked in response to certain questions). Courts in other circuits have also adopted this process. *See e.g.*, *Texas v. Holder*, No. 1:12-CV-128 (D.D.C. Apr. 20, 2012), ECF No. 84 at 2-3 (refusing to grant blanket protective order); *Nashville Student Org. Comm. v. Hargett*, 123 F. Supp. 3d 967, 971 (M.D. Tenn. 2015) (ordering depositions to proceed, at which the legislators may raise legislative privilege, as warranted, but must answer the questions posed).

### C. None of the cases BHISD Cites Overrules *LULAC II*, Which Called the Challenged Order "Carefully Crafted," "Admirably Prudent, Cautious, Vigilant, and Narrow."

Neither *Jackson Municipal Airport Authority v. Harkins*, 67 F.4th 678 (5th Cir. 2023), *withdrawn and superseded* by 2023 WL 5522213 (5th Cir. Aug. 25, 2023), *vacated* by 2023 WL 5542823 (5th Cir. Aug. 29, 2023) (granting en banc rehearing), nor *LUPE II*, 68 F.4th 228 (5th Cir. May 17, 2023), overrules *LULAC II*. Unlike *LULAC II*, neither case involved a dispute regarding deposition testimony. 2022 WL 2713263, at *1. Instead, the discovery disputes in *Jackson Municipal*

*Airport Authority*[6] and *LUPE II* pertained to documents withheld by non-party legislators based on claims of legislative privilege. 2023 WL 5522213, at *1; 68 F.4th at 231-32. Unlike *LULAC II*, where the issues relating to legislative privilege were not yet ripe, 2022 WL 2713263, at *1, the privilege was assessed by the district court in *LUPE II*, 68 F.4th at 232 (observing that the district court rejected most of the legislative privilege claims after non-party legislators produced a privilege log and subsequently ordered production of the documents) and *Jackson Municipal Airport Authority*, 67 F.4th at 684 (noting that the magistrate judge determined that legislative privilege had been waived as to certain documents and ordered the production of those documents).

Unlike *LUPE II* and *Jackson Municipal Airport Authority*, the district court here did not assess BHISD's legislative privilege claim; nor could it do so because BHISD asserted legislative privilege before the depositions of Superintendent Poole (as a fact witness and as BHISD's 30(b)(6) designee) and Trustee Skinner occurred. The district court's reasoned process requires the deponent to answer when legislative privilege is invoked, but it does not permit public disclosure of that information. ROA.4447. Indeed, the district court's order dictates that, where a party

---

[6] BHISD acknowledges that *Jackson Municipal Airport Authority*, like *LUPE II*, is inapposite because it does not address legislative privilege claims in the context of deposition testimony. BHISD's Br. at v. The Fifth Circuit's decision to rehear *Jackson Municipal Airport Authority en banc* will have no bearing on the issues before the Court in this case.

invokes legislative privilege, those questions and answers "shall be deemed CONFIDENTIAL" as defined in the Amended Protective Order. ROA.4447. The Amended Protective Order provides penalties for unauthorized disclosure. Further, the district court's order requires that for any information designated as subject to legislative privilege, the party seeking to use that information must file a motion to compel, seal those portions of the transcript, and submit the transcript to the district court for *in camera* review. ROA.4447. Thus, the district court can assess the privilege claim and if the claim is proper, whether it should yield in the circumstances of this case. *See Gillock*, 445 U.S. at 373 (recognizing that the evidentiary privilege for a state legislator should yield in a federal criminal prosecution because "important federal interests are at stake"). Therefore, *Jackson Municipal Airport Authority* and *LUPE II* are distinguishable.

Lacking any decision in this Circuit casting doubt on the "carefully crafted," "admirably prudent, cautious, vigilant, and narrow" order of the district court, *see LULAC II*, 2022 WL 2713263, at *2, BHISD looks to the Ninth Circuit's decision in *Lee v. City of Los Angele*s, 908 F.3d 1175 (9th Cir. 2018). *Lee* is not controlling in this Court. But, in any event, *Lee* is readily distinguishable.

BHISD highlights that, in *Lee*, the district court granted a protective order prohibiting the plaintiffs in that case from questioning City officials on "any legislative acts, motivations, or deliberations pertaining to the 2012 redistricting

ordinance" and the court subsequently granted summary judgment to the City and plaintiffs appealed both decisions of the district court. 908 F.3d at 1181. But, although the Ninth Circuit affirmed the district court's protective order, it did so in conjunction with its affirmance of the district court's order granting summary judgment. And, in upholding the district court's summary judgment order, the Ninth Circuit concluded that the plaintiffs in *Lee* failed to raise a genuine issue of material fact that the City was motivated predominately by race in its redistricting process (which was the issue in that case). *See Id*. at 1178. The Court further explained that "the factual record in this case falls short of justifying" inquiry by Plaintiffs into the City officials' motives. *Id.* at 1188.

Here, however, the record is quite different—there is no ruling below concluding that the Plaintiffs have failed to raise a genuine issue of material fact that BHISD was motivated, at least in part, by race when it revised its Hair Policy. To the contrary, the district court, citing "evidence in the record of selective enforcement, procedural irregularities, and increasingly restrictive amendments [to the Hair Policy], coupled with the lack of a persuasive justification for the hair-length policy," held that Plaintiff Kaden Bradford had established a substantial likelihood of success on his gender discrimination, race discrimination, and First Amendment claims. *Arnold v. Barbers Hill Indep. Sch. Dist*., 479 F. Supp. 3d 511, 528 (S.D. Tex. 2020). Moreover, Superintendent Poole and Trustee Skinner have

*already* submitted sworn testimony regarding BHISD's motivations, as have several other BHISD officials. Thus, *Lee* is inapplicable to the facts of this case. Plaintiffs-Appellees should be permitted to inquire into whether the narrative BHISD has advanced is mere pretext.

## III. Legislative Privilege Does Not Apply Here.

### A. Superintendent Poole Does Not Have Standing to Invoke Legislative Privilege.

Superintendent Poole does not have standing to invoke legislative privilege because he is an executive officer, not a legislator. Legislative privilege may only be asserted by state and local officials acting in a legislative capacity. *Cunningham v. Chapel Hill, ISD,* 438 F. Supp. 2d 718, 722 (E.D. Tex. 2006). Courts have extended legislative privilege to school board members because an act by a school board bears the "hallmarks of traditional legislation . . . reflect[ing] a discretionary, policymaking decision." *Id*. at 723 (quoting *Bogan v. Scott-Harris*, 523 U.S. 44 (2000)). However, executive officers, like a superintendent, do not have standing to invoke legislative privilege. *See Gilby v. Hughs*, 471 F. Supp. 3d 763, 767 (W.D. Tex. 2020).

Superintendent Poole is the chief executive officer of BHISD, not a board member. Tex. Ed. C. 11.201(a) ("A superintendent is the educational leader and chief executive officer of a district."). His duties generally do not require him to primarily work in a legislative capacity. In contrast, the Board's duties are primarily

legislative in nature, including (1) adopting comprehensive goals for the district and the superintendent; (2) adopting a policy to establish district- and campus-level planning and decision-making processes; and (3) adopting rules that require students to adhere to a dress code. *See* Tex. Ed. C. 11.1511(b); FNCA(LOCAL)-A. Indeed, BHISD confirmed that the "District's Board [not Superintendent Poole] voted to adopt and approve the dress and grooming code that is in effect for the entire District." *See* ROA.4192; *see also* ROA.5168 (where Superintendent Poole states that it is the *school board's* exclusive right to set the policy, not his, because they are elected officials (emphasis added)).

Because Superintendent Poole's duties are not contemplated to bear the hallmarks of a traditional legislator, he cannot invoke the privilege. *See Gravel v. United States*, 408 U.S. 606, 625 (1972) ("Members of Congress are constantly in touch with the Executive Branch of the Government and with administrative agencies—they may cajole, and exhort with respect to the administration of a federal statute—but such conduct, though generally done, is not protected legislative activity."); *Gilby*, 471 F. Supp. 3d at 768 (determining that communications from legislators to the executive branch seeking guidance on formulating legislation "are not meaningfully different" from communications between legislators and constituents, lobbyists, or think-tanks); *Cunningham*, 438 F. Supp. 2d at 719 (where

the defendant school district did not invoke legislative privilege on behalf of the superintendent).

### B. Superintendent Poole and the Board Have Waived Legislative Privilege.

#### 1. Superintendent Poole and the Board Waived Legislative Privilege Through Prior Public Statements.

Moreover, even if Superintendent Poole has standing to invoke legislative privilege, he and the Board members waived the privilege after making several public statements on allegedly privileged matters, outside of the legislative process.[7] Legislative privilege "is a personal one and may be waived or asserted by each individual legislator." *Gilby*, 471 F. Supp. 3d at 767. Crucially, waiver "need not be explicit and unequivocal, and may occur either in the course of the litigation when a party testifies as to otherwise privileged matters, or when purportedly privileged communications are shared with outsiders." *Favors v. Cuomo*, 285 F.R.D. 187, 211-12 (E.D.N.Y. 2012) (internal quotations citations omitted). Here, Superintendent Poole, Trustee Skinner, and the other Board members unequivocally waived legislative privilege.

---

[7] In addition, neither Superintendent Poole nor the individual Board of Trustees have properly asserted legislative privilege. *See Perez v. Perry,* No. 5:11-CV-360, 2014 WL 106927, at *2 (W.D. Tex. Jan. 8, 2014) (explaining that counsel "may not invoke the legislative privilege; each [individual] must assert or waive the privilege individually.").

Legislators waive the privilege when they speak on the public record regarding matters otherwise subject to the privilege, *see Alexander v. Holden*, 66 F.3d 62, 68 (4th Cir. 1995) (finding legislative privilege was "clearly waived" when commissioners "testified extensively as to their motives in depositions with their attorney present, without objection"), and when they share information otherwise protected by the privilege with outside third parties. *Perez v. Perry*, No. 5:11-CV-360, 2014 WL 106927, at *2 (W.D. Tex. Jan. 8, 2014) ("To the extent ... that any legislator, legislative aide, or staff member had conversations or communications with any outsider (e.g., party representatives, non-legislators, or non-legislative staff), any privilege is waived as to the contents of those specific communications.").

Superintendent Poole waived legislative privilege when, at the lower court's July 2020 preliminary injunction hearing, he testified extensively, without intervention from counsel, on the subjective intent, thought processes, and motives underlying the Hair Policy. Superintendent Poole testified that language in the Hair Policy referring to locs and cornrows was removed, at least in part, due to inquiries from the U.S. Department of Justice that made BHISD realize the "racial nature" of those hairstyles. ROA.5166. He also indicated that the Hair Policy reflected BHISD's "high expectations," the policy set BHISD apart and unlike "other school districts" nearby, did not reflect "lax eroding standards." ROA.5170. Superintendent

Poole went so far as to testify that the Board shared with him their goals with respect to the Hair Policy and that the policy "has always been about high expectations, [not] race or discrimination." ROA.5170-5171.

In addition, Superintendent Poole and each Board member submitted public declarations to the court that described their intent in enacting the Hair Policy. For example, Superintendent Poole characterized the intent and basis for crafting the Hair Policy as being related to input from local employers and colleges. *See* ROA.1566. Similarly, Trustee Skinner affirmed that: "When I voted to adopt small modifications to the language of the hair length regulation, I only intended to clarify the regulation and dress code exemption procedures, not to change them." ROA.1658 at ¶ 4. Superintendent Poole and board members also asserted in their declarations that the December 2019 revisions to the Hair Policy were made based on recommendations from the U.S. Department of Justice. *See, e.g.*, ROA.1568 at ¶ 16; ROA.1658 at ¶ 6.

Superintendent Poole also waived the privilege by publicly sharing information with the press. Specifically, Superintendent Poole published an op-ed in the Baytown Sun, the local newspaper, claiming that the purpose of the Hair Policy was to maintain BHISD's "high standard[s]" and "African American culture is not given the same exemption from the dress code [as other cultures or religion]." ROA.1345-1346. Superintendent Poole also disseminated information on the

subjective intent, thought processes, and motive underlying the Hair Policy through public social media posts. In December of 2020, Superintendent Poole claimed, via Twitter, that the Hair Policy was informed by "statistically significant correlations" between academic success, safer schools, and schools with stricter dress codes. *See* ROA.3225; *see also* ROA.3215-3221.

This Court's recent decision in *LUPE II* does not undermine a finding of waiver here. 68 F.4th 228. In *LUPE II*, legislators communicated with third parties, such as party leaders and lobbyists, that were part of the legislative process. There, the Fifth Circuit determined that the legislators *did not* waive their privilege because "the legislators did not send privileged documents to third parties *outside* the legislative process; instead, they brought third parties *into* the process." *Id.* at 237. Here, however, the exact opposite occurred—Superintendent Poole and the Board made public statements about privileged matters to third parties outside of the legislative process*,* well after the disputed policy was crafted, reviewed, enacted, and revised when they testified about the Hair Policy in open court, when Superintendent Poole tweeted and wrote an op-ed addressing the purpose behind the Hair Policy and when individual board members publicly filed declarations about the basis for revisions to the Hair Policy.

Moreover, unlike *LUPE II*, Appellants waived legislative privilege when they produced documents related to internal deliberations about revisions to the Hair

Policy. *See Favors*, 285 F.R.D. at 212 ("The law is clear that a legislator waives his or her legislative privilege when the legislator publicly reveals documents related to internal deliberations.") and *Nguyen v. Excel Corp.*, 197 F.3d 200, 208 (5th Cir. 1999) ("[The] disclosure of any significant portion of a confidential communication waives the privilege as to the whole.") (quoting *United States v. Davis*, 636 F.2d 1028, 1043 n. 18 (5th Cir. 1981)). For example, in discovery, BHISD turned over an email exchange between Superintendent Poole and Trustee Skinner that discussed potential responses to the media regarding revisions to the Hair Policy. The email included a draft response to a reporter's question about whether the Board would rethink its Hair Policy. The drafted response to this question that Trustee Skinner sent to Superintendent Poole was the following: "We are working hard to prepare our students for the workforce. One of our highest priorities is that 100% of seniors graduate and we've done that 6 of 8 years… What would you consider most useful to students of all backgrounds, cultures and religions? Something that makes them happy in the present, or a foundation that will equip them for a future of change and constants demands. I know, you want yours now!"

Even more telling, BHISD itself at one point argued that Plaintiffs-Appellees should depose Superintendent Poole to determine the Board's motive in revising the Hair Policy. In a motion to quash the deposition of Sara Leon, counsel for BHISD, Appellants asserted attorney-client privilege and then argued that: "Plaintiffs can

acquire relevant, non-privileged information on matters related to the December 2019 hair policy revisions from the District's Rule 30(b)(6) designee." ROA.3840. Appellants later confirmed that Superintendent Poole was the 30(b)(6) designee. During this discovery dispute, legislative privilege was never raised as a reason not to question the 30(b)(6) designee or individual board members.

Superintendent Poole, Trustee Skinner, and the Board waived legislative privilege multiple times over by providing prior testimony and public statements on allegedly privileged subjects.

### 2. Superintendent Poole and the Board Waived Legislative Privilege by Attempting to Use Legislative Privilege as a Sword and Shield.

BHISD seeks to use legislative privilege as both a sword and shield in this case to gain an unfair advantage over Plaintiffs-Appellees. However, rules of evidence and equity prohibit allowing a party to profit from such a tactic. *See United States v. Woodall*, 438 F.2d 1317, 1324 (5th Cir. 1970) ("privilege…is intended only as an incidental means of defense, and not as an independent means of attack, and to use it in the latter character is to abandon it in the former.") (citation omitted). On the one hand, BHISD has presented self-serving statements about the School Board's purported race- and gender-neutral motives for enacting the Hair Policy in order to attack the credibility of the allegations in Plaintiffs-Appellees' complaint. On the other hand, BHISD attempts to shield from discovery all factual inquiry into the

Board's motives in enacting and revising the Hair Policy. However, Fifth Circuit case law is clear that "a party may not use privileged information both offensively and defensively at the same time." *Willy v. Admin. Rev. Bd*., 423 F.3d 483, 497 (5th Cir. 2005).

The sword and shield doctrine prohibits "the manifest unfairness … that results when a party invokes privileged communications while denying its adversary access to the same." *In re Itron, Inc.*, 883 F.3d 553, 564-65 (5th Cir. 2018) (cleaned up). Yet, BHISD has created just this kind of "manifest unfairness" by invoking purportedly privileged evidence of race- and gender-neutral motives for the Hair Policy, while seeking to deny Plaintiffs-Appellees the opportunity to depose Superintendent Poole and Trustee Skinner regarding the same. Under the sword and shield doctrine, if a party affirmatively relies on privileged information to support an element of its defense, the privilege is deemed waived. *See id.* at 558; *In re Schlumberger Tech. Corp*., 818 F. App'x 304, 307 (5th Cir. 2020); *Conkling v. Turner*, 883 F.2d 431, 434 (5th Cir. 1989). The scope of the waiver will extend to all subject matter related to the privileged information introduced into the litigation. *Itron* at 558; *Doe v. Baylor Univ.*, 335 F.R.D. 476, 498–99 (W.D. Tex. 2020) ("The scope of…waiver extends also to the material on that subject matter necessary to litigate the issue fairly.").

*Cunningham v. Chapel Hill Indep. Sch. Dist.*, which BHISD cites approvingly in their brief, BHISD's Br. at 10, recognizes that this doctrine applies to legislative privilege in just such a circumstance as is presented by this case. 438 F. Supp. 2d 718 (finding that school board trustees will be deemed to have waived legislative privilege if they testify as to the school board's motivations for a decision adverse to the plaintiff and, as a result of that waiver, would be subject to depositions on that issue).

The facts of this case are also materially indistinguishable from the facts which this Court in *Conkling* found established waiver of privilege under the sword and shield doctrine. 883 F.2d at 435. In *Conkling*, the plaintiff introduced into evidence assertions about select privileged communications with his attorney in order to establish that he did not have notice of relevant facts until a date which fell within the statute of limitations. *Id*. at 432-33. In order to investigate the credibility of these assertions, defendants sought discovery, including depositions of the plaintiff's current and former attorneys, regarding information tending to show when the plaintiff first knew or should have known of the relevant facts underlying his claim. *Id*. at 434. The Court found, pursuant to the sword and shield doctrine, that the plaintiff had waived his attorney-client privilege by injecting privileged information into the litigation and thus deposition questions of his attorneys related to the information which he had introduced would be permitted. *Id.* at 434-35. As in

*Conkling*, BHISD has affirmatively introduced privileged information to attack Plaintiffs-Appellees' legal claims and has thus forfeited its right to shield related inquiry into BHISD's motives from discovery.

It is difficult to imagine a more egregious example of relying on legislative privilege as both a sword and shield to gain manifestly unfair advantage over an opposing party than that presented by this case. As discussed, *supra* at 2-3, BHISD has expressly and affirmatively relied on declarations from every single member of the relevant legislative body (the Board), as well as testimony and a declaration from the superintendent in support of its defense. In offering these statements, BHISD voluntarily introduced into evidence information regarding the entire Board's motives in enacting the Hair Policy, exactly the kind of motive evidence which BHISD now claims is shielded from discovery by legislative privilege.

The statements introduced by BHISD consist of assertions providing specific non-discriminatory rationales for the enactment of the Hair Policy and are intended to present a credible attack on the allegations of discriminatory motive at the heart of Plaintiffs-Appellees' legal claims. At the same time, BHISD attempts to eliminate any ability Plaintiffs-Appellees have to contest BHISD's assertions through discovery of contradictory evidence by claiming a privilege that extends to all non-public evidence of BHISD's motives. *See* BHISD's Br. at 6 (claiming that legislative privilege precludes Plaintiffs-Appellees from posing any questions to

Superintendent Poole, Trustee Skinner, "*and any other District witness*" that "*could elicit* testimony" about these matters, regardless of whether such inquiries would actually elicit indisputably non-privileged information (emphasis added)). If prohibited from inquiring into the actual motives of the Board in enacting the policy, Plaintiffs-Appellees would be put at manifestly unfair disadvantage in responding to this attack on their legal claims, contrary to relevant Fifth Circuit case law. *Itron*, 883 F.3d at 564-65; *Conkling*, at 434. In these circumstances, the law makes clear that the privilege must be deemed waived and discovery into information related to the motive evidence that BHISD has introduced into this litigation must be allowed. *See Itron, 883* F.3d at 558 ("[T]o prevent selective or misleading disclosures, fairness dictates that the waiver extend to related subject matter").

## IV. Even If Legislative Privilege Applies and Was Not Waived, It Should Yield as This Case Presents Important Federal Interests.

The legislative privilege is qualified and may be overcome by important federal interests. *Gillock*, 445 U.S. at 373. Indeed, legislative privilege "must be strictly construed and accepted only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth." *Jefferson Cmty. Health Care Ctrs. Inc*., 849 F.3d at 624 (quoting *Perez,* 2014 WL 106927, at *1; *LULAC v. Guillen*, 2022 WL 2713263, No. 22-50407, 2022 WL 2713263 (5th Cir. May 20, 2022) at *2 ("The state legislative privilege . . . must not

be used as a cudgel to . . . prevent the discovery of the truth in cases where the federal interests at stake outweigh the interests protected by the privilege").

As the Supreme Court recognized, a private litigant who challenges racial discrimination under the Civil Rights Act of 1964 is "vindicating *a policy that Congress considered of the highest priority*." *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 401–02 (1968) (emphasis added). Plaintiffs-Appellees allege race and sex discrimination, as well as violations of freedom of expression, in school. These federal interests are of particular import as they involve harms suffered by children who are consequently deprived of receiving an education. In *Allen v. Wright*, the Supreme Court held that such injury, that is, "children's diminished ability to receive an education in a racially integrated school—is, beyond any doubt, not only judicially cognizable but, as shown by cases from *Brown v. Board of Education*, 347 U.S. 483 (1954), to *Bob Jones University v. United States*, 461 U.S. 574 (1983), one of the most serious injuries recognized in our legal system." 468 U.S. 737, 756, (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014); *see also Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969) ("The vigilant protection of constitutional freedoms is nowhere more vital than in the community of American schools.") (quoting *Shelton v. Tucker*, 364 U.S. 479, 487 (1960)).

Plaintiffs-Appellees thus seek to enforce some of the most crucial rights conferred by the Constitution, within a vital American institution. And they do so to vindicate the rights of children. There is a confluence of important federal interests at stake here. *See Hobart v. City of Stafford*, 784 F. Supp. 2d 732, 765–66 (S.D. Tex. 2011) (recognizing that there is a very strong interest in the enforcement of civil rights statutes that provide remedies for violations of the Constitution).

Moreover, unlike some cases where the courts have declined to hold that legislative privilege must yield to important federal interests, here, Plaintiffs-Appellees must prove discriminatory intent. *Compare Am. Trucking Ass'ns, Inc. v. Alviti*, 14 F.4th 76, 88–89 (1st Cir. 2021) ("We need not reject altogether the possibility that there might be a private civil case in which state legislative immunity must be set to one side because the case turns so heavily on subjective motive or purpose. This is not such a case, however, because proof of the subjective intent of state lawmakers is unlikely to be significant enough in this case to warrant setting aside the privilege."), *and In re N. Dakota Legislative Assembly*, 70 F.4th 460, 465 (8th Cir. 2023) (declining to hold that the legislative privilege yielded where the underlying claim did not turn on discriminatory intent), *with United States v. Bd. of Educ. of the City of Chi.*, 610 F. Supp. 695, 700 (N.D. Ill. 1985)) (Where a case involved allegations of intentional discrimination, "the decisionmaking process ... *is* the case.").

BHISD has not pointed to the availability of other sources of information to obtain the information that Plaintiffs seek. And "given the practical reality that officials seldom, if ever, announce on the record that they are pursuing a particular course of action because of their desire to discriminate against a racial minority," *Veasey v. Perry*, No. 2:13-CV-193, 2014 WL 1340077, at *3 (S.D. Tex. June 18, 2014), there is no alternative source for evidence of the contemporaneous and candid discussions of the Board's subjective intentions, thought processes, support or non-support, rationales, and motives for the Hair Policy. *See Angelicare, LLC v. St. Bernard Par.*, No. 17-7360, 2018 WL 1172947, at *9 (E.D. La. Mar. 6, 2018) (finding that legislative privilege did not apply to councilmembers' intent testimony because evidence could not be obtained through other means as there were not robust meeting notes; in-depth circumstantial evidence of intent; or meeting minutes with council members' statements of reasoning for the decisions made); *Baldus v. Members of Wis. Gov't Accountability Bd.*, No. 11-CV-562, 2011 WL 6122542, at *2 (E.D. Wis. Dec. 8, 2011) (recognizing that "the highly relevant and potentially unique nature of the evidence" weighed in favor of disclosure).

## CONCLUSION

For the foregoing reasons, this Court should dismiss the appeal for lack of jurisdiction and dissolve the stay pending appeal. Alternatively, this Court should

affirm the orders of the district court, allowing depositions to proceed as governed by the lower court's June 1, 2023 order.

Dated: October 2, 2023         Respectfully submitted,

/s/ Michaele N. Turnage Young
Michaele N. Turnage Young
Victor Jones
Joseph Wong
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
700 14th Street N.W., Ste. 600
Washington, D.C. 20005
(202) 682-1300

Janai S. Nelson
Ashley Burrell
Alexandra S. Thompson
Patricia N. Okonta
Alaizah Koorji
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, New York 10006
(212) 965-2200

Roxanne Tizravesh
Nicholas E. Petree
R. Conor Tomalty
Nik Soni
AKIN GUMP STRAUSS HAUER &
FELD LLP
1111 Louisiana Street, Ste. 44
Houston, Texas 77002
(713) 220-5800

Evan Frohman
AKIN GUMP STRAUSS HAUER &
FELD LLP

1 Bryant Park
New York, NY 10036

*Counsel for Plaintiffs-Appellees*

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), the undersigned certifies that:

This motion complies with the type-volume limitations of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 9,112 words.

This motion complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Times New Roman, 14-point font.

/s/ Michaele N. Turnage Young
Michaele N. Turnage Young

*Attorney for Plaintiffs-Appellees*

# CERTIFICATE OF SERVICE

I hereby certify that a copy of the above was filed electronically with the Clerk of the Court using the CM/ECF system this October 2, 2023. Notice of this filing will be sent to ALL counsel by operation of the court's electronic filing system.

/s/ Michaele N. Turnage Young
Michaele N. Turnage Young

*Attorney for Plaintiffs-Appellees*