CASE NO. 23-20256

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

**Everett De'Andre Arnold; Kaden Bradford; Sandy Arnold,**

*Plaintiffs - Appellees*

v.

**Barbers Hill Independent School District; Barbers Hill Independent School District's Board of Trustees; Fred Skinner; Greg Poole,**

*Defendants - Appellants*

On Appeal from the United States District Court,
for the Southern District of Texas, Houston Division, No. 4:20-cv-1802

## APPELLANTS' REPLY BRIEF

**RICHARD A. MORRIS**
**State Bar No. 14497750**
**rmorris@rmgllp.com**
**JONATHAN GRIFFIN BRUSH**
**State Bar No. 24045576**
**jbrush@rmgllp.com**
**AMY DEMMLER**
**State Bar No. 24092337**
**ademmler@rmgllp.com**

Rogers, Morris & Grover, L.L.P.
5718 Westheimer Rd., Suite 1200
Houston, Texas 77057
Telephone: 713/960-6000
Facsimile: 713/960-6025

**Attorneys for Defendants-Appellants**
**Barbers Hill Independent School**
**District, Barbers Hill Independent**
**School District's Board of Trustees,**
**Fred Skinner and Greg Poole**

# TABLE OF CONTENTS

TABLE OF CONTENTS........................................................................ ii

TABLE OF AUTHORITIES ...............................................................iv

SUMMARY OF THE ARGUMENT ......................................................1

ARGUMENT AND AUTHORITIES......................................................2

    A.    The Court has appellate jurisdiction ......................................2

        1.    This appeal falls within the collateral order doctrine .................2

        2.    Plaintiffs-Appellees' contrary arguments lack merit..................6

        3.    *LUPE II* is on point ....................................................7

        4.    In the alternative, the Court may construe the appeal as a request for a writ of mandamus ...................................9

    B.    The Court should reverse and vacate the district court's order regarding legislative privilege .........................................10

        1.    Plaintiffs-Appellees cannot distinguish their case from the scores of discrimination cases that failed to establish "extraordinary instances" .........................................11

        2.    Plaintiffs-Appellees' contrary arguments lack merit.................14

        3.    A legislator's employee, such as Superintendent Poole, can assert the privilege .............................................19

        4.    Plaintiffs-Appellees' illogical, unpersuasive waiver arguments are not properly before the Court.............................21

        5.    Plaintiffs-Appellees tacitly concede the district court's order is void ..................................................24

CONCLUSION AND PRAYER ...........................................................25

CERTIFICATE OF SERVICE ..................................................................26

CERTIFICATE OF COMPLIANCE.......................................................27

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Am. Trucking Ass'ns, Inc. v. Alviti*,
    14 F.4th 76 (1st Cir. 2021) .................................................................. Passim

*Belo Broadcasting Corp. v. Clark*,
    654 F.2d 423 (5th Cir. 1981) ........................................................................ 6

*Bogan v. Scott-Harris*,
    523 U.S. 44 (1998) ................................................................................... Passim

*Cohen v. Beneficial Indus. Loan Corp.*,
    337 U.S. 451 (1949) ...................................................................................... 2

*Cunningham v. Chapel Hill ISD*,
    438 F. Supp. 2d 718 (E.D. Tex. 2006) ............................................... 5, 10, 21

*Dobbs v. Jackson Women's Health Org.*,
    142 S. Ct. 2228 (2022) ................................................................................. 15

*Doe v. McMillan*,
    412 U.S. 306 (1973) .................................................................................... 20

*Domain Protection, L.L.C. v. Sea Wasp, L.L.C.*,
    23 F.4th 529 (5th Cir. 2022) ....................................................................... 22

*Gilby v. Hughs*,
    471 F. Supp. 3d 763 (W.D. Tex. 2020) ................................................. 20, 22

*Gravel v. United States*,
    408 U.S. 606 (1972) ...................................................................................... 3

*In re Bonvillian Marine Serv., Inc.*,
    19 F.4th 787 (5th Cir. 2021) ................................................................... 9, 17

*In re Hubbard*,
    803 F.3d 1298 (11th Cir. 2015) .................................................................. 10

*In re Kellogg Brown & Root, Inc.*,
    756 F.3d 754 (D.C. Cir. 2014)............................................................. 4, 6, 10

*Karr v. Schmidt*,
    401 U.S. 1201 (1971)............................................................................. 13, 14

*La. Cleaning Sys., Inc. v. City of Shreveport*,
    2018 WL 3039739 (W.D. La. June 19, 2018).................................... Passim

*La Union Del Pueblo Entero v. Abbott ("Lupe I")*
    2022 WL 1667687 (W.D. Tex. May 25, 2022)......................................... 18

*La Union Del Pueblo Entero v. Abbott ("Lupe II")*
    68 F.4th 228 (5th Cir. May 17, 2023)................................................. Passim

*Lee v. City of Los Angeles*,
    908 F.3d 1175 (9th Cir. 2018) ........................................... 12, 15, 18

*Mohawk Indus., Inc. v. Carpenter*,
    558 U.S. 100 (2009)............................................................................. 2, 5, 7

*M.T. v. Tatum Indep. Sch. Dist.*,
    No. 2:21-CV-00364-RWS (E.D. Tex. Oct. 13, 2023).......................... 13, 18

*Payne v. Progressive Finc. Servs., Inc.*,
    748 F.3d 605 (5th Cir. 2014) ..................................................................... 8

*Perez v. Perry*,
    2014 WL 106927 (W.D. Tex. Jan. 8, 2014) ......................................... Passim

*Tenney v. Brandhove*,
    341 U.S. 367 (1951)............................................................................... 5, 19

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.*,
    393 U.S. 503 (1969)................................................................................. 18

*United States v. Gillock*,
    445 U.S. 360 (1980)................................................................................. 11

*United States v. Helstoski*,
    442 U.S. 477 (1979)................................................................................. 21

*United States v. Jefferson*,
  546 F.3d 300 (4th Cir. 2008) ........................................................ 4

*United States v. O'Brien*,
  391 U.S. 367 (1968)..................................................................... 15

*Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.*,
  913 F.3d 443 (5th Cir. 2019) ............................................... 2, 4, 6

*Vill. of Arlington Heights v. Metro. Housing Dev. Corp.*,
  429 U.S. 252 (1977).......................................................... 11, 12, 15

*Whole Woman's Health v. Smith*,
  896 F.3d 362 (5th Cir. 2018) ............................................... Passim

## STATE CASES

*In re Perry*,
  60 S.W.3d 857 (Tex. 2001) ........................................... 10, 11, 16

## FEDERAL STATUTES AND RULES

28 U.S.C. § 1651 ............................................................................ 10

U.S. Const., Art. I.................................................................... 3, 19

U.S. Const., Art. II ...................................................................... 19

Fed. R. App. P. 28.1 ..................................................................... 22

5th Cir. R. 47.5.4......................................................................... 17

## STATE STATUTES

Tex. Const. Art II ........................................................................ 19

Tex. Educ. Code § 11.061(d) ......................................................... 5

Tex. Educ. Code § 11.201 ...................................................... 19, 20

Tex. Educ. Code § 11.512............................................................ 20

# OTHER AUTHORITIES

*Appellants' Reply Brief, LUPE II,*
2022 WL 3043239 (July 27, 2022)............................................................. 17

## SUMMARY OF THE ARGUMENT

Legislative privilege stems from the U.S. Constitution. It ensures federal, state, regional, and local legislators can focus on their policymaking duties rather than litigation. While the privilege may be pierced in narrow "extraordinary instances," cases alleging discrimination in election laws and housing do not meet the requisite standard. Accordingly, Plaintiffs-Appellees' case – which challenges matters historically left to local control – cannot meet the threshold.

In their brief, Plaintiffs-Appellees do not articulate why their claims are more important than voting, housing, or any number of other federally protected interests. Instead, their brief focuses on the case's merits, attacks jurisdiction, and asserts legislative privilege was waived. All three foci betray inherent weaknesses in their appellate arguments. *First*, this appeal is not about the merits. It is about the district court's decision to compel local legislators to sit for depositions and reveal their subjective thoughts and motives for policymaking decisions. *Second*, in *La Union Del Pueblo Entero v. Abbott* ("*LUPE II*"), 68 F.4th 228, 232 (5th Cir. 2023), this Court held that "orders denying non-party state-legislators' assertions of legislative privilege" are immediately appealable. Every policy rationale articulated in *LUPE II* supports its application here. *Third*, Plaintiffs-Appellees' waiver arguments are not properly before the Court. The district court did not find a waiver, and Plaintiffs-Appellees did not cross-appeal. Moreover, Plaintiffs-Appellees advocate for an

1

exception to the legislative privilege that would, as this Court explained months ago, "swallow the rule."

## ARGUMENT AND AUTHORITIES

**A.    The Court has appellate jurisdiction.**

The Court may review the district court's decision effectively stripping Superintendent Poole's and Trustee Skinner's legislative privilege. While 28 U.S.C. § 1291 limits appellate jurisdiction to final decisions, "courts have long given this restriction a practical rather than technical construction." *LUPE II*, 68 F.4th at 232 (quoting *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 451, 456 (1949)). Under *Cohen*, the Court has jurisdiction to review orders that "(1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) [are] effectively unreviewable on appeal." *Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.*, 913 F.3d 443, 448 (5th Cir. 2019). "[T]he decisive consideration is whether delaying review until the entry of final judgment 'would imperil a substantial public interest' or 'some particular value of a high order.'" *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 107 (2009) (citation omitted).

**1.    This appeal falls within the collateral order doctrine.**

All three *Cohen* conditions are met, and the Court has appellate jurisdiction under the collateral order doctrine. This Court has already concluded that the class

at issue in this appeal, "orders denying non-party state-legislators' assertions of legislative privilege," are immediately appealable. *LUPE II*, 68 F.4th at 232.

The first *Cohen* condition is satisfied if, among other things, (1) a district court compels the disclosure of information shielded by legislative privilege; or (2) failure to comply with the complained-of order may result in sanctions. *LUPE II*, 68 F.4th at 232–35. *First*, once a deposition occurs and privileged information is revealed, the information cannot be returned. In those circumstances, the constitutional mandate that legislators "shall not be questioned in any other [p]lace" is already breached. U.S. Const., Art I, § 6; *Gravel v. United States*, 408 U.S. 606, 617 (1972). Here, the district court ordered Superintendent Poole and Trustee Skinner to appear for depositions and answer questions, even if legislative privilege applies. Compliance would undermine the purpose of the legislative privilege – to prevent external interference with legislators' policymaking duties. *LUPE II*, 68 F.4th at 233. *Second*, "conclusiveness is apparent" when "failure to comply with [the district court's order] may result in sanctions." *Id.* (quoting *Whole Woman's Health v. Smith*, 896 F.3d 362, 367 (5th Cir. 2018)). In this case, the district court authorized Plaintiffs-Appellees to seek sanctions against Appellants for failing to present Superintendent Poole and Trustee Skinner to answer privileged questions. ROA.4500. Accordingly, the first *Cohen* condition is met.

The second *Cohen* condition is met because this appeal considers an "important question[] separate from the merits" of the underlying case. *Smith*, 896 F.3d at 367. This appeal concerns the contours of legislative privilege, not the District's ultimate liability. *See United States v. Jefferson*, 546 F.3d 300, 309 (4th Cir. 2008). "Exposing potentially confidential information is an important issue wholly separate from the merits of the underlying litigation." *Vantage Health Plan*, 913 F.3d at 448; *see also Smith*, 896 F.3d at 367.

The third *Cohen* condition is met because, absent an interlocutory appeal, Plaintiffs-Appellees will elicit privileged deposition testimony before final judgment. The district court did not merely order Superintendent Poole and Trustee Skinner to submit for depositions. Instead, it ordered Superintendent Poole and Trustee Skinner to answer all Plaintiffs-Appellees' questions, irrespective of privilege objections. "[O]nce confidential information is released, there is no going back." *Vantage Health Plan*, 913 F.3d at 448; *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 761 (D.C. Cir. 2014) (Justice Kavanaugh wrote, "appeal after final judgment will often come too late because the privileged materials will already have been released. In other words, 'the cat is out of the bag.'").

Exercising appellate jurisdiction here "also satisfies *Mohawk*'s formulation, which allows interlocutory jurisdiction when delaying review would harm a substantial public interest or some particular value of a high order":

> Delaying review for this class of claims would imperil both of those interests. The public has a substantial interest in ensuring that elective office remains an invitation to draft legislation, not defend [depositions]. Freedom from constant distraction is a high-order value.

*LUPE II*, 68 F.4th at 233 (citing *Mohawk*, 558 U.S. at 109); *see also Tenney v. Brandhove*, 341 U.S. 367, 377 (1951) ("Legislators are immune from deterrents to the uninhibited discharge of their legislative duty . . . for the public good."). It is inconsistent with separation of powers principles "for a court to inquire into the motives of legislators," including local legislators like the District's trustees. *Tenney*, 341 U.S. at 377; *Bogan v. Scott-Harris*, 523 U.S. 44, 48–50 (1998).

Plaintiffs-Appellees sought and received extensive document discovery. The District, its employees, and its trustees made exhaustive efforts to accommodate Plaintiffs-Appellees' thorough discovery requests. Notably, trustees serve as unpaid volunteers. Tex. Educ. Code § 11.061(d). They have full-time jobs outside the District. *See id.* Plaintiffs-Appellees' actions, if upheld, risk deterring future citizens from serving their communities simply because someone aligned differently on the political spectrum disagrees with a policy decision. *Cunningham v. Chapel Hill ISD*, 438 F. Supp. 2d 718, 723 (E.D. Tex. 2006) (expressing these concerns). "Constant distraction" is an understatement. *Cf. LUPE II*, 68 F.4th at 233.

Because all three *Cohen* conditions are met, the Court has jurisdiction to hear this appeal under the collateral order doctrine.

## 2. Plaintiffs-Appellees' contrary arguments lack merit.

Plaintiffs-Appellees contend this Court lacks jurisdiction under the collateral order doctrine. App'ee Br. at 9. Except for a few generalities about appellate jurisdiction, Plaintiffs-Appellees misunderstand the *Cohen* exception. *See* App'ee Br. at 8–14.

*First*, Plaintiffs-Appellees contend the district court decision didn't make an ultimate determination on how they might use the privileged material they elicit during depositions. App'ee Br. at 10. How a district court or litigant stylizes an order doesn't determine its "proper characterization." *See Belo Broadcasting Corp. v. Clark*, 654 F.2d 423, 426 (5th Cir. 1981). The district court's order compels Superintendent Poole and Trustee Skinner to sit and testify about information shielded by the legislative privilege. That is "conclusive" in every practical sense. *See In re Kellogg*, 756 F.3d at 761.

*Second*, Plaintiffs-Appellees assert that the waiver issue "require[s] the Court to consider the public statements BHISD has advanced regarding its intent." App'ee Br. at 11. They are mistaken, again. This Court has consistently maintained that privilege issues are "wholly separate from the merits of the underlying litigation." *Vantage Health Plan*, 913 F.3d at 448; *Smith*, 896 F.3d at 367.

*Third*, Plaintiffs-Appellees hang their argument regarding the third *Cohen* condition on the U.S. Supreme Court's holding in *Mohawk*. However, the *Mohawk*

Court "express[ed] no view on" how the collateral order doctrine applies to "governmental privileges." *Mohawk*, 558 U.S. at 113 n.4. This Court likewise held that "[n]othing in *Mohawk* forbids jurisdiction" in legislative privilege cases. *LUPE II*, 68 F.4th at 234. In fact, this Court has concluded the opposite. In *LUPE II*, the Court expressly rejected Plaintiffs-Appellees' arguments, observing that *Mohawk* considered "governmental (not private) non-parties (not litigants) asserting legislative privilege (not attorney-client privilege)." *Id.* Unlike the individuals in *Mohawk*, Superintendent Poole and Trustee Skinner are governmental non-parties asserting legislative privilege. ROA.3090–91, 3105 (dismissing individual defendants from lawsuit).

Defendant-Appellants have already established the applicability of the collateral order doctrine. Plaintiffs-Appellees' paper-thin arguments to the contrary, which ignore applicable in-circuit precedent, are easily dismissed.

**3.** ***LUPE II* is on point.**

Plaintiffs-Appellees concede the *LUPE II* court "appl[ied] the *Cohen* exception to a discovery order." App'ee Br. at 13. Yet they still argue this Court lacks jurisdiction and *LUPE II* doesn't apply. Even though (1) this Court rebuffed the improper invasion of information protected by the legislative privilege mere months ago; and (2) an exploratory, fishing expedition-like deposition into the subjective thoughts and motives of policymakers, like that sought by Plaintiffs-

Appellees, is markedly more invasive than the document discovery at issue in *LUPE II*.

This Court should reject Plaintiffs-Appellees' unpersuasive attempt to cabin *LUPE II*'s holding. *First*, Plaintiffs-Appellees assert that "critically, the legislators in *LUPE II* had not . . . waive[d] the privilege." App'ee Br. at 14. Despite labeling this statement "critical," it is immaterial to the jurisdictional question; it "confuses two separate inquiries: (1) the merits . . . ; and (2) jurisdiction." *See Payne v. Progressive Finc. Servs., Inc.*, 748 F.3d 605, 608 (5th Cir. 2014). Additionally, in *LUPE II*, the plaintiffs-appellees also argued that the government had waived legislative privilege. 68 F.4th at 236. This Court disagreed, explaining that the waiver argument could not "swallow the rule." *Id.*; *see also infra* Section B(4) (addressing waiver).

*Second*, Plaintiffs-Appellees argue Superintendent Poole and Board President Skinner "are represented by defense counsel," unlike the legislators in *LUPE II*. App'ee Br. at 14. This is inaccurate. The Texas Attorney General represented both the non-party legislators and state defendants in *LUPE II*. Moreover, all three distinctions relied upon by the *LUPE II* Court are present here: Superintendent Poole and Trustee Skinner are "governmental (not private) non-parties (not litigants) asserting legislative privilege (not attorney-client privilege)." 68 F.4th at 234; ROA.3090–91, 3105.

*Third*, Plaintiffs-Appellees suggest the *LUPE II* Court was only concerned that "privileged information . . . would be improperly shared into the public domain." Again, this is inaccurate and only addresses one aspect of the Court's reasoning. *LUPE II*, 68 F.4th at 233 ("For *all those reasons*, we have interlocutory jurisdiction . . . .") (emphasis added). The Court first explained that "litigation itself distracts lawmakers from the job that voters sent them to do," and "they cannot get that time back." *Id.* That concern rings true here. Moreover, Plaintiffs-Appellees seek to implement a dramatically more invasive process than the document discovery at issue in *LUPE II*: a fishing expedition-like deposition into the subjective thoughts and motives of policymakers.

*LUPE II* is on point. All three of its distinctions from *Mohawk* are implicated here. And this case also implicates the paramount concern about interference with legislators' policymaking duties. Consistent with precedent from the U.S. Supreme Court and this circuit, the Court has appellate jurisdiction to review the district court's order vitiating the legislative privilege. *See In re Bonvillian Marine Serv., Inc.,* 19 F.4th 787, 792 (5th Cir. 2021) (discussing the rule of orderliness).

### 4. In the alternative, the Court may construe the appeal as a request for a writ of mandamus.

"Although mandamus is not a substitute for a jurisdictionally proper appeal, it can be an appropriate vehicle for obtaining immediate judicial review of nonfinal orders that would otherwise escape timely scrutiny." *Am. Trucking Ass'ns, Inc. v.*

*Alviti*, 14 F.4th 76, 84 (1st Cir. 2021); *Smith*, 896 F.3d at 367–69; 28 U.S.C. § 1651.

In similar cases, the courts granted mandamus:

- The state officials "raise[d] unsettled legal questions about the scope of the legislative privilege as applied to state lawmakers." *Id.*

- "[T]he degree to which state officials may be subjected to discovery in civil cases alleging violations of the federal constitution raises important questions about the appropriate balance of power between the states and the federal government." *Id.* at 85.

- "[T]he questions presented are likely to reoccur." *Id.* (collecting cases). Indeed, in this circuit alone, these questions have been raised multiple times in the past few years.

- "[T]he ordinary course of perfecting an appeal by incurring a contempt order is sometimes less readily available to state actors than to private parties." *Id.* An "appeal after final judgment will . . . come too late because the privileged materials will already have been released." *In re Kellogg*, 756 F.3d at 761.

*See also Smith*, 896 F.3d at 367–69; *In re Hubbard*, 803 F.3d 1298, 1305 (11th Cir. 2015); *In re Perry*, 60 S.W.3d 857, 861–62 (Tex. 2001). Therefore, the Court may exercise mandamus jurisdiction under 28 U.S.C. § 1651.

**B.     The Court should reverse and vacate the district court's order regarding legislative privilege.**

The legislative privilege protects the legislative process by shielding legislators' motives from discovery. The doctrine stems from the U.S. Constitution, and the U.S. Supreme Court has even explained that "[t]he rationales for according absolute immunity to federal, state, and regional legislators apply with equal force to local legislators." *Bogan*, 523 U.S. at 52; *Cunningham*, 438 F. Supp. 2d at 723

("The testimonial privilege is an inherent aspect of the legislative immunity that applies to local legislators under the Speech and Debate Clause of the United States Constitution."). There is one narrow exception recognized by the U.S. Supreme Court: the "extraordinary instances" exception, which may arise in a criminal case. This is not a criminal case, and Plaintiffs-Appellees cannot distinguish their case from those not constituting "extraordinary instances." Plaintiffs-Appellees' reliance on dicta and unpublished motions panels' orders is misplaced.

1. **Plaintiffs-Appellees cannot distinguish their case from the scores of discrimination cases that failed to establish "extraordinary instances."**

"In some extraordinary instances," policymakers "might be called . . . to testify concerning the purpose of . . . official action." *Vill. of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 268 (1977). However, the U.S. Supreme Court has never held any civil case contained the requisite "extraordinary instances." *Cf. United States v. Gillock*, 445 U.S. 360, 373 (1980) (criminal case). Nor has this Court. *See LUPE II*, 68 F.4th at 237–38. Nor has the Texas Supreme Court. *See In re Perry*, 60 S.W.3d at 861–62. Judicially sanctioned intrusions into legislative immunity are exceedingly rare. *Id.* at 862 n.2.The cases denying plaintiffs a license for a forced interrogation span the spectrum of federal claims.

In *Village of Arlington Heights*, the plaintiffs alleged a municipality denied a rezoning request that would allow a development company "to build . . . townhouse

units for low- and moderate-income tenants" for racially discriminatory reasons. 429 U.S. at 254. These were not "extraordinary instances." *Id.* at 268 & n.18 ("judicial inquiries into legislative or executive motivation represent a substantial intrusion into the workings of other branches of government").

The U.S. Supreme Court revisited the issue in *Bogan v. Scott-Harris*. There, a city employee sued city officials and alleged "racial animus" and First Amendment retaliation in the elimination of her position. *Bogan*, 523 U.S. at 47. The Court held that city officials maintained "absolute legislative immunity." *Id.* at 53. Again, there were no "extraordinary instances."

The Ninth Circuit recently addressed legislative privilege in *Lee v. City of Los Angeles*. In *Lee*, the plaintiffs argued a municipality's redistricting decisions were racially motivated. 908 F.3d 1175, 1178 (9th Cir. 2018). The Ninth Circuit "recogniz[d] that claims of racial gerrymandering involve[d] serious allegations." *Id.* at 1188. However, it rejected "a categorical exception whenever a constitutional claim directly implicates the government's intent" *Id.* Such an exception "would render the privilege of little value" and be inconsistent with *Village of Arlington Heights. Id.*

In *American Trucking Associations v. Alviti*, the plaintiffs asserted that collecting tolls under a state toll assessment law was discriminatory. 14 F.4th at 88. The First Circuit rejected the plaintiffs' arguments. *Id.* "Were [the court] to find the

mere assertion of a federal claim sufficient, even one that addresses a central concern of the Framers," it explained, "the privilege would be pretty much unavailable largely whenever it is needed." *Id.*

This Court recently considered the scope of legislative privilege considering the above caselaw. In *LUPE II*, the plaintiffs argued the Texas Legislature "acted with racially discriminatory intent" in amending the Election Code "as it relates to voter registration, voting by mail, poll watchers, and other aspects of election integrity and security." 68 F.4th at 231–32. This Court explained it was not "one of those extraordinary instances in which the legislative privilege must yield." *Id.* at 237.

Plaintiffs-Appellees' claims are not "extraordinary instances" as a matter of law. Here, Plaintiffs-Appellees allege race and sex discrimination regarding a school's hair-length regulation. Other courts in this circuit have already concluded that some, if not all, of their claims might be nonviable as a matter of law. *See* Order Granting Partial Summary Judgment, *M.T. v. Tatum Indep. Sch. Dist.*, No. 2:21-CV-00364-RWS, at 16–18 (E.D. Tex. Oct. 13, 2023) (acknowledging that the school district's hair-length policy justifications survived intermediate scrutiny as a matter of law). The only on-point response from the U.S. Supreme Court comes from Justice Black. *Karr v. Schmidt*, 401 U.S. 1201, 1202–03 (1971) (orig. proceeding).

He summarily dismissed the premise of a cognizable claim based on a school's hair-length regulation:

> The only thing about it that borders on the serious to me is the idea that anyone should think the Federal Constitution imposes on the United States courts the burden of supervising the length of hair that public school students should wear.

*Id.* Plaintiffs-Appellees' claims do not implicate federal interests more important than *any* of the cases cited above. Therefore, "extraordinary instances" do not exist, and Plaintiffs-Appellees are barred from asking Superintendent Poole and Trustee Skinner about their "subjective thoughts or motives" on the Hair Policy. *LUPE II*, 68 F.4th at 240.

### 2. Plaintiffs-Appellees' contrary arguments lack merit.

While they argue this case presents "important federal interests," Plaintiffs-Appellees do not meaningfully attempt to distinguish any of the above cases, save one. App'ee Br. at 35–38. Plaintiffs-Appellees cite several U.S. Supreme Court cases for the undisputed proposition that civil rights laws are important. App'ee Br. at 36. But tellingly, Plaintiffs-Appellees do not cite even one controlling case demonstrating their case meets the "extraordinary instances" test and bypasses legislative immunity. *See* App'ee Br. at 35–38. Therein lies the rub.

Plaintiffs-Appellees assert they need to depose policymakers because they "must prove discriminatory intent" to prevail. App'ee Br. at 37. Plaintiffs-Appellees distinguish *Alviti* on this ground. App'ee Br. at 37. This argument has already been

rejected. *LUPE II*, 68 F.4th at 238; *Lee*, 908 F.3d at 1188. Plaintiffs-Appellees' argument "would render the privilege of little value" and contradicts *Village of Arlington Heights*, which itself "involved an equal protection claim alleging racial discrimination" and "putting the government's intent directly at issue." *Lee*, 908 F.3d at 1188.

Curiously, Plaintiffs-Appellees portray the existence of racial animus in the Hair Policy as fact, yet they insist that they cannot prove their case without depositions. *See* App'ee Br. at 38. Setting aside this inconsistency, neither Superintendent Poole nor Trustee Skinner speak for the entire board. In *Lee*, the court noted that the relevant inquiry concerns "the *legislature's* decision," not an individual legislator. 908 F.3d at 1184. "[I]nquiries into legislative motives are a hazardous matter," because "what motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it." *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2256 (2022) (quoting *United States v. O'Brien*, 391 U.S. 367, 384 (1968)). Discriminatory intent does not exist here, but if it did, it could be established with circumstantial evidence. *See Village of Arlington Heights*, 429 U.S. at 265.

Plaintiffs-Appellees' argument that "there is no alternative source for evidence" is peculiar considering they cite ample alternative sources in their brief. *Compare* App'ee Br. at 2 (citing public statements, op-eds, declarations, and other

documents explaining the Hair Policy's rationale), *with id.* at 38. In addition to Plaintiffs-Appellees' lengthy list, Defendant-Appellants also observe that the District produced board minutes, recordings of open meetings, community feedback and public comments, internal reports, and many thousands of emails regarding the Hair Policy. *See In re Perry*, 60 S.W.3d at 862 (holding depositions were inappropriate where the government had produced "a wide array of documentary information . . . to the plaintiffs").

Equally curious is Plaintiffs-Appellees' reliance on dicta from *Jefferson Community Health Care Centers, Inc. v. Jefferson Parish Government*. App'ee Br. at 17–19, 35. As recently explained by this Court, *Jefferson Community* "provides no support for the idea that state legislators can be compelled to produce" information "concerning the legislative process and a legislator's subjective thoughts or motives." *LUPE II*, 68 F.4th at 240. In *Jefferson Community*, the city council members asserted that legislative immunity prohibited the district court "from even *deciding* whether to issue injunctive relief." *Id.* (emphasis in original). The Court "held only that a claim for injunctive relief could proceed." *Id.* "That holding says nothing about cases like this one." *Id.* Plaintiffs-Appellees have not explained how an invasive, exploratory probing into policymakers' "subjective thoughts or motives" is acceptable when mere document production is not. *Cf. id.* In

any event, the *LUPE II* Court's analysis is controlling here. *Cf. In re Bonvillian*, 19 F.4th at 792.

Plaintiffs-Appellees apparently mischaracterize a two-page, unpublished motions panel order in *LULAC II* as "controlling precedent." *Compare* App'ee Br. at v, 20–21, *with* 5th Cir. R. 47.5.4. The plaintiffs in *LUPE II* also tried to rely on *LULAC II*. *LULAC II*'s limited reasoning pulls from *Jefferson Community*, which this Court has already explained does not apply in these circumstances. *LUPE II*, 68 F.4th at 240. Defendant-Appellants agree with the legislators in *LUPE II* that "[s]tatements in *Jefferson* [*Community*] and *LULAC* that the legislative privilege is 'qualified' are . . . unhelpful. Neither case explores the nature of that qualification or supplies any guidance about how the legislative privilege applies in a case like this one." Appellants' Reply Brief, *LUPE II*, 2022 WL 3043239, at *11 (July 27, 2022). This Court agreed. *See generally LUPE II*, 68 F.4th at 240–41 (declining to address plaintiffs-appellees' *LULAC II* arguments).

Lastly, Plaintiffs-Appellees attempt to distinguish the Ninth Circuit's decision in *Lee*. App'ee Br. at 23–24. In so doing, they focus on the different procedural posture. App'ee Br. at 23 (highlighting that the district court in *Lee* granted summary judgment whereas the district court below did not). This distinction misses the mark, as the *LUPE II* Court considered *Lee*'s relevance in a similar procedural posture to the present case but did not find it noteworthy. *Compare LUPE II*, 68 F.4th at 231–

32 (considering the legislator's interlocutory appeal following a granted motion to compel), and *La Union Del Pueblo Entero v. Abbott* ("*LUPE I*"), No. SA-21-CV-00844-XR, 2022 WL 1667687, at *1 (W.D. Tex. May 25, 2022) (granting motion to compel), *with Lee*, 908 F.3d at 1181–82. Plaintiffs-Appellees' proffered distinction is irrelevant.

Plaintiffs-Appellees also cite the district court's finding on a limited preliminary injunction record that the District did not have "a persuasive justification for the hair-length policy" as another distinction from *Lee*. App'ee Br. at 23 (citation omitted). On October 13, 2023, another Texas district court acknowledged the same policy justifications advanced by the District here were sufficient to survive intermediate scrutiny as a matter of law. *See* Order Granting Partial Summary Judgment, *M.T. v. Tatum Indep. Sch. Dist.*, No. 2:21-CV-00364-RWS, at 16–18 (E.D. Tex. Oct. 13, 2023) (the policy justifications were (1) community expectations, (2) student success, and (3) career readiness). The district court's disagreement with the policy justifications does not invalidate them, nor is it sufficient to distinguish *Lee* from this case. *Cf. Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 507 (1969) (noting the U.S. Supreme Court "has repeatedly emphasized the need for affirming the comprehensive authority of the States and of school officials . . . to prescribe and control conduct in the schools") (citations omitted).

This Court, like its sister circuits, has concluded that legislative privilege bars invasion of legislators' subjective thoughts or motives in these circumstances. Plaintiffs-Appellees rely on unpersuasive arguments that have already been rejected or proffer factual distinctions without substantive analysis. Because Plaintiffs-Appellees cannot establish the requisite "extraordinary circumstances," they cannot pierce legislative privilege for "the public good." *Cf. Tenney*, 341 U.S. at 377.

### 3. A legislator's employee, such as Superintendent Poole, can assert the privilege.

Plaintiffs-Appellees concede that Trustee Skinner and his fellow board members are protected by legislative privilege. App'ee Br. at 24. Superintendent Poole, they suggest, does not enjoy the same privilege. In doing so, Plaintiffs-Appellees draw a false analogy to the federal separation of powers scheme, where independent, co-equal branches of government are not beholden to each other. *Compare* U.S. Const. Arts I, II, *and* Tex. Const. Art II, § 1, *with* App'ee Br. at 24–25.

Their analogy cannot hold; the Texas public education system is structured differently from the federal government. Under the Education Code, a board of trustees may employ a superintendent. Tex. Educ. Code § 11.201(b). The superintendent's duties include "preparing recommendations for policies to be adopted by the board of trustees." *Id.* § 11.201(d)(7). "The board of trustees and the

superintendent *shall* work together to: . . . establish district-wide policies." *Id.* § 11.1512(b)(4) (emphasis added).

It is well-established that employees of legislators can assert legislative privilege. *See Doe v. McMillan*, 412 U.S. 306, 312 (1973) (citation omitted); *Gilby v. Hughs*, 471 F. Supp. 3d 763, 767 (W.D. Tex. 2020). Superintendent Poole is the only employee directly selected and hired by the Board. Tex. Educ. Code § 11.201(b). He is statutorily required to "prepare recommendations for policies." *Id.* §§ 11.201(d)(7), 11.1512(b)(4). Therefore, he can assert legislative immunity and the testimonial privilege as the Board's employee. *See La. Cleaning Sys., Inc. v. City of Shreveport*, No. 16-CV-0014, 2018 WL 3039739, at *2 (W.D. La. June 19, 2018) (holding the legislative privilege applied to the mayor and city attorney for their recommendations in executive session). The District informed Plaintiffs-Appellees of these cases and statutes. ROA.4276. But instead of addressing them, Plaintiffs-Appellees chose to maintain their strawman comparison to the federal separation of powers system. App'ee Br. at 24–25.

Any other result would be anomalous. While responsible for the District's ultimate policy-making functions, trustees rely on their superintendent. Plaintiffs-Appellees apparently concede that they can't inquire into trustees' "subjective thoughts and motives" directly but suggest they can acquire the same information from Superintendent Poole. If such a probing, invasive inquiry into the legislative

process is permissible, the privilege exists in name only. And if courts punished trustees' reliance on their superintendents by piercing the privilege, it would "dissuade some citizens from volunteering for [school boards] and would surely hinder the free flow of discussion that is such an integral part of the democratic legislative process." *Cunningham*, 438 F. Supp. 2d at 723; *City of Shreveport*, 2018 WL 3039739, at \*2 (expressing same concerns).

### 4. Plaintiffs-Appellees' illogical, unpersuasive waiver arguments are not properly before the Court.

Legislative privilege bars "inquiry into acts that occur in the regular course of the legislative process and into the motivation for those acts." *United States v. Helstoski*, 442 U.S. 477, 489 (1979). It protects ancillary matters inherent in the enactment of policies, including the subjective thoughts and motives behind a policy's enactment. *Bogan*, 523 U.S. at 55 (describing a legislator's act in voting for an ordinance as "quintessentially legislative"); App'nt Br. at 10 (collecting cases).

Of course, legislative privilege may be waived. *E.g.*, *Cunningham*, 438 F. Supp. 2d at 723–24; *City of Shreveport*, 2018 WL 3039739, at \*2. When a legislator shares privileged information publicly, the privilege is waived as to that information. *LUPE II*, 68 F.4th at 236–37 ("legislative privilege as to certain documents is waived when the Legislator *publicly* reveal[s] those documents") (emphasis in original). However, waivers are construed narrowly. *See id.*; *Perez v. Perry*, No. SA-11-CV-

360-OLG, 2014 WL 106927, at *2 (W.D. Tex. Jan. 8, 2014); *City of Shreveport*, 2018 WL 3039739, at *2.

Plaintiffs-Appellees assert Defendant-Appellants "raised . . . whether BHISD has waived legislative privilege or is using legislative privilege as both a sword and a shield" on appeal. App'ee Br. at 11. This is incorrect. *First*, the District cannot waive legislative privilege. "Legislative privilege is a personal one and may be waived or asserted by each individual legislator" or their employees.[1] *Gilby*, 471 F. Supp. 3d at 767. Plaintiffs-Appellees' repeated efforts to suggest that the District asserted or waived privilege miss the mark. *Second*, it appears Plaintiffs-Appellees are dissatisfied with the district court's decision to not find a waiver of immunity at this juncture. If so, they should have cross-appealed. Fed. R. App. P. 28.1; *Domain Protection, L.L.C. v. Sea Wasp, L.L.C.*, 23 F.4th 529, 540 (5th Cir. 2022) (noting a cross-appeal is necessary when the litigant "seek[s] something the judgment did not include"). The district court did not make a finding on waiver but nonetheless forced Superintendent Poole and Trustee Skinner to disclose privileged information; therefore, the waiver issue is not properly before the Court.

It is true that Superintendent Poole and Trustee Skinner made public statements about the Hair Policy. Defendants-Appellants acknowledge privilege is

---

[1] To be clear, Superintendent Poole and Trustee Skinner have repeatedly made their intention to assert legislative privilege clear. ROA.4273. The district court effectively prohibited them from doing so, necessitating this appeal.

waived "as to the contents of . . . specific communications" revealed to the public. *Perez*, 2014 WL 106927, at \*2; *LUPE II*, 68 F4th at 236–37. As a result, the District has never sought to withhold information regarding Superintendent Poole's or the Board of Trustees' public statements. Those topics are seemingly insufficient for Plaintiffs-Appellees; otherwise, this litigation would not be necessary.

In any event, public statements about policymaking functions and litigation are not universal waivers. The *City of Shreveport* court rejected Plaintiffs-Appellees' argument, explaining, "the public statements referenced by Plaintiff were made pursuant to the council members' legislative function." 2018 WL 3039739, at \*2. Likewise, the city attorney's "explanation of the reasons for the amendment, which was clearly done for the benefit of the members of the community, did not reveal confidential information to third parties and thereby waive the privilege." *Id.* When the Board of Trustees issued statements about the Hair Policy, they engaged in a "legislative function." *See id.* When Superintendent Poole wrote an op-ed, he did so "for the benefit of the members of the community." *See id.*

By comparison, one cannot interrogate a legislator on their subjective thoughts and motives in voting for or against a bill simply because (1) a bill analysis or statement of intent exists; or (2) the legislator made a public comment before or after the vote. If the rule differed, the exception "would swallow the rule almost whole." *Cf. LUPE II*, 68 F.4th at 236.

Here, the District offered to present its employees and trustees for depositions to answer questions about any information that has been shared publicly. Plaintiffs-Appellees were dissatisfied with this offer and wanted to inquire into "the subjective intent, thought process, support or non-support, and rationale" regarding the Hair Policy *beyond* the public information. ROA.4186–289, 4397–401. Defendants-Appellants are not using the privilege as a sword and a shield, and Plaintiffs-Appellees refusal to accept the District's offer and conduct depositions regarding already-public information is telling. They ask this Court to find a waiver of *all* information subject to the legislative privilege, not just the "specific communications" revealed to the public. *Perez*, 2014 WL 106927, at *2. But those communications do not act as a general and all-encompassing waiver. This Court should reject their efforts to vitiate the privilege.

### 5. Plaintiffs-Appellees tacitly concede the district court's order is void.

Plaintiffs-Appellees did not advance any arguments about the enforceability of the district court's order compelling the depositions and authorizing Plaintiffs-Appellees to seek sanctions. ROA.4500. That order was issued without jurisdiction and is void. App'nt Br. at 21–22 (collecting cases). Defendants-Appellants respectfully request that this Court (1) hold that the district court's order is void; and (2) clarify that the filing of an interlocutory appeal deprives district courts of jurisdiction to enforce the appealed order. App'nt Br. at 22–23.

## CONCLUSION AND PRAYER

For the foregoing reasons, this Court should (1) reverse and vacate the district court's orders establishing a deposition protocol that requires Superintendent Poole and Trustee Skinner to reveal information protected by the legislative privilege; (2) vacate the district court's null and void order compelling the depositions because it was issued without jurisdiction; and (3) award the Defendant-Appellants their taxable costs of appeal.

Respectfully submitted,

ROGERS, MORRIS & GROVER, L.L.P.

/s/ Jonathan Griffin Brush

_____

RICHARD A. MORRIS
State Bar No. 14497750
rmorris@rmgllp.com
JONATHAN GRIFFIN BRUSH
State Bar No. 24045576
jbrush@rmgllp.com
AMY DEMMLER
State Bar No. 24092337
ROGERS, MORRIS & GROVER, LLP
5718 Westheimer Road, Suite 1200
Houston, Texas 77057
Telephone: (713) 960-6000
Facsimile: (713) 960-6025

*Attorney for Defendants-Appellants*

# CERTIFICATE OF SERVICE

I hereby certify that on October 23, 2023, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send electronic notification of such filing to all counsel of record.

I further certify that (1) the required privacy redactions have been made, 5th Cir. R. 25.2.13; (2) the electronic submission is an exact copy of the paper document, 5th Cir. R. 25.2.1; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

I further certify that I will mail the correct number of paper copies of the foregoing document to the Clerk of the Court when requested.

/s/ Jonathan Griffin Brush

_____

Jonathan Griffin Brush
*Attorney for Defendants-Appellants*

<u>**CERTIFICATE OF COMPLIANCE**</u>

Pursuant to FED. R. APP. P. 32(a)(7)(B) and Local Rule 32.3, the undersigned certifies:

1. This Brief complies with the type-volume limitations of FED. R. APP. P. 32(a)(7)(B)(ii) because:

  X this brief contains **5,524** words, excluding the parts of the brief exempted by FED. R. APP. P. 32(f), *or*

    this brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii).

2. This Brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because:

  X this Brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2023 in 14 point Times New Roman font in text and 12 point Times New Roman font in footnotes, *or*

    this Brief has been prepared in a monospaced typeface using _____ with _____.

3. The undersigned understands a material misrepresentation in completing this certificate, or circumvention of the type-volume limits in 5th Cir. R. 32(a)(7)(B)(ii) may result in the Court's striking the Brief and imposing sanctions against the person signing the Brief.

    /s/ Jonathan Griffin Brush

    _____
    Jonathan Griffin Brush
    *Attorney for Defendants-Appellants*